In re David G. LEE and Carole A. Lee, Debtors.

UNITED STATES of America, Plaintiff,

v.

David G. LEE and Carole A. Lee, and Robert L. Coley, Trustee, Defendants.

In re Paul M. LEVINE, Debtor.

UNITED STATES of America, Plaintiff,

v.

Paul M. LEVINE, Defendant.

In re Jerry Irwin HOCHMAN, Debtor.

UNITED STATES of America, Plaintiff,

v.

Jerry Irwin HOCHMAN and Robert L. Coley, Trustee, Defendants.

In re William J. SCHNEIDER, Debtor.

In re Michelle ALEXANDER, Debtor.

Bankruptcy Nos. A84–04621, A85–00211, A85–01303, A86–02396 and A86–03497. Adv. Nos. 86–0346A, 86–0347A and 86–0345A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 27, 1987.

834

Rose H. Staples, Paul C. Parker & Associates, Decatur, Ga., for David G. Lee and Carole A. Lee.

J.D. Roy Atchison, Asst. U.S. Atty., Atlanta, Ga., for U.S. in Nos. A84–04621, A86–02396 and A86–03497.

Herbert E. Heitman, Atlanta, Ga., for Paul M. Levine.

J. William Boone, Asst. U.S. Atty., Atlanta, Ga., for U.S. in No. A85–00211.

Jonathan I. Sbar, Jonathan I. Sbar, P.C., Atlanta, Ga., for Jerry Irwin Hochman.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for U.S. in No. A85–01303.

Richard B. Herzog, Jr., Bisbee, Parker & Rickertsen, Atlanta, Ga., for William J. Schneider.

Kenneth Mitchell, Giddens, Davidson, Mitchell & Eaton, Atlanta, Ga., for Michelle Alexander.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Presently pending before the Court are objections to the above-styled debtors' inclusion of Health Education Assistance Loans ("HEAL") in their Chapter 13 composition plans, filed by plaintiff, the United States of America, on behalf of its agency the Department of Health & Human Services ("HHS").[1] In several of the underlying adversary proceedings, HHS also filed complaints to revoke dischargeability of these loans.

Due to the similarity of factual and legal issues in these proceedings and other adversary proceedings and cases before this Court, a joint hearing was conducted on the question of dischargeability of HEAL loans. This hearing was held on September 22, 1986 and at that time counsel for HHS confirmed that the issue of good faith and the motions to vacate confirmation order would be withdrawn. The issue before the Court is whether 42 U.S.C. Section 294f(g) (1982) controls the dischargeability of HEAL loans in Chapter 13 or whether 11

U.S.C. Section 1328 (1982) is the governing statutory provision. Based upon the following analysis, the HHS complaint to determine HEAL loans to be nondischargeable by a Chapter 13 composition plan is denied.

## FINDINGS OF FACT

### I. IN RE DAVID G. LEE AND CAROLE A. LEE.

The following facts are undisputed as stipulated by the parties. See Stipulation, June 13, 1986. David Lee was granted HEAL loans in the sum of $1,500, $5,750, and $8,500 on February 26, 1982, June 26, 1982 and March 7, 1983 respectively. Debtor Carole Lee was granted a HEAL loan on September 29, 1982 in the sum of $8,000. Both debtors graduated from Life Chiropractic College on December 17, 1983, and repayment on the notes was to begin October 1, 1984. See Government Exhibits A, B, C, and D, attached to complaint.

Debtors defaulted and filed a joint petition under Chapter 13 of the Bankruptcy Code on October 9, 1984. Chase Manhattan Bank, who originated part of the loans, was listed on debtors' schedules and received notice of the creditors' meeting. HHS did not receive notice of this case since they were not scheduled as a creditor. See Order and Notice for Meeting of Creditors, page 2. On November 23, 1984, Chase Manhattan Bank filed an insurance claim with HHS on David Lee's HEAL loan note. Exhibit E. They assigned their claim to HHS. Exhibit C, page 2. On November 30, 1984, the bank filed a proof of claim against David Lee. HHS paid the insurance claim on December 3, 1984. Exhibit H. Debtors' thirty-six month, twenty (20%) percent composition plan was confirmed by Order of January 29, 1985. No appeal was taken from the Order of Confirmation which is a final order.

The Student Loan Marketing Association, Sallie Mae, purchased Carole Lee's note from First American Bank on October

---

1. HEAL loans are provided by private lenders for education of health professionals, but are fully guaranteed by HHS. See 42 U.S.C. Section 294 et seq.

18, 1982 and filed an insurance claim with HHS on Carole Lee's loan on March 1, 1985. Exhibit I. Sallie Mae filed a proof of claim on March 11, 1985. HHS paid the insurance claim and received an assignment of the note. Exhibits J, K. HHS claims David Lee is indebted to it in the amount of $10,604.85 plus interest, as of February 28, 1985 and Carole Lee in the amount of $10,524 plus interest. Exhibits H, K (HHS certificates of indebtedness). On March 11, 1986, HHS filed a motion to vacate confirmation order and to modify plan to exclude HEAL loan as well as a complaint to revoke dischargeability.

## II. IN RE PAUL M. LEVINE.

Defendant-debtor Paul Levine obtained a HEAL loan, in order to attend Life Chiropractic College, on January 3, 1983 in the sum of $12,500. Sallie Mae purchased debtor's note from the First Virginia Bank on January 17, 1983. See Government Exhibits A, B and C. Payments on the note were to commence June 1, 1984. Exhibit E (certificate of indebtedness). Debtor defaulted on this loan as no payments were made. On January 16, 1985, debtor filed a joint voluntary petition under Chapter 13. In his Chapter 13 Statement, debtor listed an indebtedness to First American Bank, who originated the loan, representing the HEAL loan in the sum of $12,000. HHS received no notice of the pending Chapter 13 case prior to confirmation. See Order and Notice for Meeting of Creditors, page 2.

Sallie Mae filed a proof of claim in this case on March 11, 1985 claiming an indebtedness of $16,455.82. Debtor proposed a thirty-six month, one (1%) percent composition plan. Neither HHS nor Sallie Mae appeared or opposed the confirmation of this plan. On May 28, 1985, the plan was duly confirmed by the Court and no appeal was taken by any party.

HHS paid Sallie Mae's insurance claim in the amount of $16,982 on June 18, 1985 and received an assignment of the note. Exhibits D, E. On March 11, 1986, nine months after confirmation, HHS simultaneously filed a motion to vacate confirmation order

and to modify plan to exclude HEAL loan and the underlying adversary complaint to revoke dischargeability of HEAL loan.

## III. IN RE JERRY HOCHMAN.

Debtor obtained HEAL loans in the amount of $5,903 and $7,624 on June 3, 1982 and November 26, 1982, respectively, in order to attend Life Chiropractic College. Exhibits C, D. Sallie Mae purchased debtor's notes from Chase Manhattan Bank, who originated the loans, on May 2, 1983. See Proof of Claim. Repayment was to commence on January 1, 1984. Debtor defaulted on the loans as only $95.52 in payments were made during three successive forbearance periods until May 31, 1985. Exhibit G (certificate of indebtedness). On March 13, 1985 debtor filed a voluntary joint petition under Chapter 13. In his Chapter 13 Statement debtor listed an indebtedness to "S.L.R.C. for HEAL Loan" for $17,300.94.

Sallie Mae filed a proof of claim on May 24, 1985 for $18,778.11. HHS had paid Sallie Mae's insurance claim on May 15, 1985 for $18,630 and received an assignment of the note. Exhibits G, H. Debtor proposed an amended thirty-six month, eleven (11%) percent composition plan. Sallie Mae was served with a notice of rescheduled hearing on confirmation of plan on June 5, 1985. Neither HHS nor Sallie Mae appeared or opposed confirmation of this plan. On July 17, 1985, the plan was duly confirmed by the Court and no appeal was taken. On March 11, 1986, some eight months later, HHS simultaneously filed a motion to vacate confirmation order and to modify debtor's plan to exclude HEAL loans and a complaint to revoke dischargeability.

## IV. IN RE WILLIAM J. SCHNEIDER.

Debtor obtained two HEAL loans in the sum of $9,000 and $6,316 on September 29, 1982 and August 1, 1983, respectively, in order to attend Life Chiropractic College. Sallie Mae purchased debtor's notes from First American Bank, who originated the loans, on October 18, 1982. Repayment was to commence on January 1, 1986 after

several forbearance periods. Debtor defaulted on these loans as no payments were made by him. *See* Declaration of John F. Haczewski, attached to HHS proof of claim. On March 31, 1986, debtor filed a voluntary petition under Chapter 13. In his Chapter 13 Statement, debtor listed an indebtedness to the Student Loan Repayment Center in Merrifield, Virginia for his HEAL loan in the sum of $21,640. Sallie Mae filed a proof of claim on June 2, 1986. HHS paid an insurance claim filed by Sallie Mae on June 6, 1986, and received an assignment of the note. On October 1, a Notice and Order was filed reciting that these notes had been assigned by Sallie Mae to HHS. HHS filed a proof of claim on September 5, 1986, for $22,768. Debtor proposed an amended sixty month, twelve (12%) percent composition plan, filed September 19, 1986. HHS filed an objection to confirmation of plan on September 11, 1986. According to debtor's response to HHS' objection, debtor graduated and practiced from July 1984 until November 1985. Chapter 13 Statement, paragraph 2(e), page 3.

## V.  IN RE MICHELLE ALEXANDER.

Debtor obtained HEAL loans in the sum of $5,650, $6,365 and $10,000 on August 30, 1979, June 24, 1980 and August 17, 1981 respectively, in order to attend the School of Veterinary Medicine at Tuskegee Institute. Though she was later dropped from that school for academic reasons, debtor graduated from Howard University with a journalism degree on May 12, 1984. Sallie Mae purchased debtor's notes from Chase Manhattan Bank who originated the loans. Repayment was to commence on March 15, 1985, after three deferments, but debtor was granted a six-month forbearance until September 1, 1985. Debtor defaulted on the loans and allegedly made two payments to Sallie Mae. On May 9, 1986, debtor filed a voluntary petition under Chapter 13. In her Chapter 13 Statement, debtor listed an indebtedness to the HEAL Program in the sum of $22,162.72.

HHS filed a proof of claim on July 9, 1986 claiming an indebtedness of $42,759. HHS had received an assignment of debt-or's note after paying Sallie Mae on an insurance claim on April 19, 1986. *See* Declaration of John F. Haczewski, attached to proof of claim. Debtor proposed a thirty-six month, thirteen (13%) percent composition plan. HHS filed an objection to confirmation on July 25, 1986. The Court confirmed debtor's plan on October 16, 1986, subject to a determination with regard to inclusion of debtor's HEAL loans in her composition plan.

## CONCLUSIONS OF LAW

■ Chapter 13 provides for a general discharge under 11 U.S.C. Section 1328(a) and a hardship discharge under Section 1328(b). A Chapter 13 debtor is not eligible for discharge under Section 1328(a) until the plan is fully consummated by payment. Thus the discharge determination comes at the completion of the case. In contrast, the hardship discharge of Section 1328(b) may be granted at any time after confirmation of a plan if the conditions of that section are satisfied. This is similar to the relatively early discharge in Chapter 7 or the Chapter 11 order of confirmation which also operates as a Chapter 11 discharge. Pursuant to Section 1322(c), a plan may provide for payments for a period as long as three years and with court permission, may provide for as long as five years. The general discharge in Section 1328(a) is made subject to very limited exceptions, to wit: certain long term debts as described in Section 1322(b)(5), and alimony, maintenance, and support obligations as set forth in Section 523(a)(5). Alternatively, Congress made the hardship discharge in Section 1328(b) subject to all of the exceptions to discharge specified in Section 523(a), which includes student loans.

The case law generally holds that educational loans may be discharged in a Chapter 13 case in which the plan is successfully completed, although they would not be dischargeable under Chapter 7. *See Johnson v. Edinboro State College*, 728 F.2d 163, 166 (3d Cir.1984); *United States v. Estus (In re Estus)*, 695 F.2d 311, 314 (8th Cir. 1982); *Phoenix Inst. of Technology v. Klein (In re Klein)*, 57 B.R. 818 (Bankr.

9th Cir.1985); *In re Lambert*, 10 B.R. 223, 225–26 (Bankr.E.D.N.Y.1981). This also includes composition plans under Chapter 13. *In re Reese*, 38 B.R. 681 (Bankr.N.D.Ga. 1984).

■ As noted Congress has also provided an alternate means of obtaining discharge in Chapter 13 for hardship cases. In that instance, although a debtor has not completed payments under a repayment plan, the court may grant a discharge upon the debtor's compliance with certain enumerated criteria in Section 1328(b). In Section 1328(c), Congress specifically determined that the granting of this hardship discharge is subject to the exceptions to discharge listed in Section 523(a), which includes student loans. This limitation on the effect of a Chapter 13 discharge only extends to hardship cases under Section 1328(b) and does not extend to Section 1328(a).

HHS argues that the discharge of a HEAL loan in a Chapter 13 case is specifically and directly controlled by 42 U.S.C. Section 294f(g). Accordingly, the Court must determine under what circumstances a HEAL loan may be discharged in a Chapter 13 case. The question presented is whether the discharge provided in 11 U.S.C. Section 1328(a) is applicable to HEAL loans or whether the test in 42 U.S.C. Section 294f(g) is applicable in determining their dischargeability.

HHS argues that the reenacted Section 294f(g) must be construed as a limited exception for HEAL loans to the Section 1328(a) discharge and cites as authority *Matter of Johnson*, 787 F.2d 1179 (7th Cir. 1986). *See also In re Gronski*, 65 B.R. 932 (Bankr.E.D.Pa.1986). Thus they contend that this Court should determine that the subject HEAL loans are nondischargeable pursuant to Section 294f(g). HHS further argues that use of the term "Title 11" was intended to include all discharges granted pursuant to the provisions of that title.

Debtor argues that the 1981 amendment which reenacted 42 U.S.C. Section 294f(g) is applicable only to discharges under Chapter 7, Chapter 11 and Chapter 13, Section 1328(b) (hardship discharges). Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, title XXVII, § 2730, 1981 U.S. Code Cong. & Ad. News (95 Stat.) 357, 919. Debtor notes that use of the term "Title 11" is consistent with this limitation because all three chapters would be affected, excepting only Section 1328(a). Further, amended Section 294f(g) added a conscionability test which is redundant under Section 1328(a) since such a test is already in place in Section 1325(a)(3). Debtor also contends, that in enacting the Omnibus Budget Reconciliation Act, when Congress intended to amend the Bankruptcy Code, it specified the section to be so amended. *See* Omnibus Budget Reconciliation Act, § 2334, 1981 U.S.Code Cong. & Ad.News (95 Stat.) 357, 863 (amending 11 U.S.C. § 523(a)(5)(A)).

Debtor maintains that Congress, in enacting the Bankruptcy Code, has evidenced an intention to structure a complete statutory scheme and that the language of Section 1328(a) is plain and its meaning amply supported by extensive legislative history. *See Bostwick v. United States*, 521 F.2d 741, 744–46 (8th Cir.1975); *In re Sweetwater*, 40 B.R. 733, 735 (Bankr.D.Utah 1984), *aff'd, Palm Springs Owners Assoc. v. Sweetwater*, 57 B.R. 743 (D.Utah 1985). Whereas Section 1328(a) expressly and specifically lists those debts excepted from discharge, Section 294f(g) is ambiguous and without supportive legislative history. Accordingly, debtor concludes, Section 1328(a)'s exclusion of student loans must be construed as intentional and must govern the present case since ambiguities must be resolved in favor of the debtor. *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 278–79, 61 S.Ct. 196, 199–200, 85 L.Ed. 184 (1940). This is necessary so that the debtor may be given the full measure of relief afforded by Congress in the bankruptcy laws. *See also Morrissey v. Wiencek (In re Wiencek)*, 58 B.R. 485, 488 (Bankr.E.D.Va.1986); *In re Lange*, 39 B.R. 483, 485 (Bankr.D.Kan.1984).

As noted, the cases which have considered Section 294f(g) have concluded that it establishes a limited exception to the discharge of educational loans under Sec-

tion 1328(a). The leading case appears to be *Matter of Johnson*, 787 F.2d 1179 (7th Cir.1986). The *Johnson* court acknowledged that both statutes appear on their face to deal with the same subject matter and accordingly must be reconciled when applied to the HEAL loan dischargeability question. The Court realized that whereas Section 1328(a) deals with discharge of all debts, including educational loans, Section 294f(g) provides for the limited nondischargeability of HEAL educational loans. In an effort to accommodate and reconcile these statutes, the court noted that they were to be read in *pari materia* (on the same subject) and harmonized when possible. 787 F.2d at 1181. The court concluded that it should be guided by rules of statutory construction that a specific statute takes precedence over a more general statute, citing *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980), and that a later enacted statute may limit the scope of an earlier one, citing *Davis v. United States*, 716 F.2d 418, 428 (7th Cir.1983).

In applying these rules of construction the Seventh Circuit looked to the dates of enactment of these statutes concluding that Section 294f(g) was the more specific and the later of the two. Section 1328(a) was enacted in 1978 by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 1978 U.S.Code Cong. & Ad.News (92 Stat.) 2549, 2650. Originally enacted in 1976, 42 U.S.C. Section 294f(g) was repealed on November 6, 1978, with the passage of the Bankruptcy Reform Act. In 1981, however, Congress reenacted Section 294f(g) adding subsections (2) and (3) which made discharge of HEAL loans even more difficult. Omnibus Budget Reconciliation Act, § 2730, 1981 U.S.Code Cong. & Ad.News (95 Stat.) 357, 919. The court in *Johnson, supra,* further concluded that in reenacting Section 294f(g), Congress was presumably aware of the existing discharge provision contained in Section 1328(a) of the Bank-

ruptcy Code. *Erlenbaugh v. United States*, 409 U.S. 239, 243–44, 93 S.Ct. 477, 480–81, 34 L.Ed.2d 446 (1972). Finally, the court concluded that since Section 294f(g) is more limited in scope than Section 1328(a), it is the more specific and thereby controlling statutory provision on the subject. Using similar reasoning several courts in Chapter 7 cases have reached a similar result in comparing Section 294f(g) and Section 523(a)(8). *United States v. Hampton (In re Hampton)*, 47 B.R. 47 (Bankr.N.D.Ill.1985); *see also Hines v. United States (In re Hines)*, 63 B.R. 731 (Bankr.D.S.D.1986) (Chapter 7 case); *United States v. Standefer*, No. C83–1082–L(B) (W.D.Ky. Sept. 21, 1984) [Available on WESTLAW DCT database].

As noted in *Johnson*, however, Section 523(a) has no application in the present Chapter 13, Section 1328(a) discharge. The provisions of Section 523(a) only apply to individual Chapter 7 cases, Chapter 11 cases and Chapter 13 cases involving a hardship discharge under Section 1328(b). 787 F.2d at 1182 n. 4. This distinction is very important because of the broader discharge provisions of Section 1328(a) as compared with Sections 727, 1141, and 1328(b). HHS' argument contrasting the effect and applicability of Sections 294f(g) and 523(a)(8) to the present issue tends to blur this fundamental difference between the Section 1328(a) discharge and other discharges under the Code. As noted by the Third Circuit in *Johnson v. Edinboro State College, supra,* 728 F.2d at 166 n. 4, the breadth of the discharge under Chapter 13 (Section 1328(a)) is greater than those pursuant to Chapters 7 and 11. This feature was intended by Congress to act as an incentive to debtors to complete performance under their plans. Accordingly, certain debts that normally would not be discharged under Chapters 7 and 11, such as educational loans, are dischargeable in a successful Chapter 13 plan.[2]

As previously discussed, this difference in the scope of the discharge represents

---

**2.** A further indication of the difference between the discharges is that debts obtained through fraud or dishonesty may be discharged in Chapter 13. *See Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982); *Matter of*

*Scher*, 12 B.R. 258, 270 (Bankr.S.D.N.Y.1981). Thus matters arguably more egregious than a default on student loans do not survive. *See infra* note 4.

clear policy choices made by Congress in its reformation of Chapter 13. Congress established the precise parameters to govern this discharge and severely limited the exceptions to the Section 1328(a) discharge. While acknowledging that educational loans are generally dischargeable in a Chapter 13 plan, the *Johnson* court concluded, nevertheless, that Section 294f(g) constitutes a limited exception to the Section 1328(a) discharge. 787 F.2d at 1181, 1182. This Court respectfully concludes, however, that Section 294f(g) does not create such an exception to the Section 1328(a) discharge based on the intent of Congress as reflected in the legislative history of these statutes.

■ Although Section 294f(g) refers to a discharge under Title 11, this term is ambiguous since the term may refer to several distinct discharge components within that title and the manner of its use does not disclose the particular provisions to which the term refers. *See* 2A C. Sands, *Sutherland on Statutes and Statutory Construction* §§ 45.02, 46.01, .04, .07 (4th ed. 1984). The reference to Title 11 is seemingly clear but this apparent plain meaning is reasonably susceptible to more than one construction.

The language of 42 U.S.C. Section 294f(g) narrows the availability of a discharge for HEAL loans "in bankruptcy under Title 11." In attempting to reconcile these statutes the Court notes that this reference to "Title 11" is seemingly clear in meaning, although it does not distinguish between the differing methods in which dischargeability is treated under the comprehensive scheme of that title. This Court recognizes that a broad application of Section 294f(g) to all title 11 is entirely plausible. The Supreme Court has stated:

... it is not unusual that exceptions to the applicability of a statute's otherwise all-inclusive language are not contained in the enactment itself but are found in another statute dealing with particular situations to which the first statute might otherwise apply.

*Muniz v. Hoffman,* 422 U.S. 454, 458, 95 S.Ct. 2178, 2181, 45 L.Ed.2d 319 (1975), citing *Tidewater Oil Co. v. United States,* 409 U.S. 151, 93 S.Ct. 408, 34 L.Ed.2d 375 (1972). This Court concludes, however, that the language of the statutes in question does not provide a means for resolving their interaction in this proceeding.

■ In the instant case two different statutes appear on their face to apply and control the issue of whether HEAL loans may be discharged or excepted from discharge under Section 1328(a) in Chapter 13. The court's first duty in construing a statute is to give effect to the intent of Congress. *United States v. Second Nat'l Bank of North Miami,* 502 F.2d 535, 539 (5th Cir.1974), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975). The United States Supreme Court, in applying rules of statutory construction in a factual situation concerning apparently conflicting statutes, has stated the following:

"[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756 [95 S.Ct. 1917, 1935, 44 L.Ed.2d 539] (1975) (Powell, J., concurring). *See Rubin v. United States,* 449 U.S. 424 [101 S.Ct. 698, 66 L.Ed.2d 633] (1981). But ascertainment of the meaning apparent on the face of a single statute need not end the inquiry. *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 10 [96 S.Ct. 1938, 1942, 48 L.Ed.2d 434] (1976); *United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 543–544 [60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345] (1940). This is because the plain-meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Boston Sand Co. v. United States,* 278 U.S. 41, 48 [49 S.Ct. 52, 53, 73 L.Ed. 170] (1928) (Holmes, J.). The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect. E.g., *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459 [12 S.Ct. 511, 512, 36 L.Ed. 226] (1892); *United States v. Ryan,* 284

U.S. 167, 175 [52 S.Ct. 65, 68, 76 L.Ed. 224] (1931).

Sole reliance on the "plain language" of ... [a statute] would assume the answer to the question at issue. These cases involve two statutes, each of which by its literal terms applies to the facts before us. Restatement of the terms of ... [the statutes] cannot answer which statute Congress intended to control. Recognizing this, the Secretary [of the Interior] invokes the maxim of construction that the more recent of two irreconcilably conflicting statutes governs. 2A C. Sands, Sutherland on Statutes and Statutory Construction § 51.02 (4th ed. 1973). Without depreciating this general rule, we decline to read the statutes as being in irreconcilable conflict without seeking to ascertain the actual intent of Congress. Our examination of the legislative history is guided by another maxim: " 'repeals by implication are not favored,' " Morton v. Mancari, 417 U.S. [535], at 549 [94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974)] quoting Posadas v. National City Bank, 296 U.S. 497, 503 [56 S.Ct. 349, 352, 80 L.Ed. 351] (1936). "The intention of the legislature to repeal must be 'clear and manifest.' " United States v. Borden Co., 308 U.S. 188, 198 [60 S.Ct. 182, 188, 84 L.Ed. 181] (1939), quoting Red Rock v. Henry, 106 U.S. [ (16 Otto) ] 596, 602 [1 S.Ct. 434, 439, 27 L.Ed. 251] (1883). We must read the statutes to give effect to each if we can do so while preserving their sense and purpose. Mancari, supra, at 551 [94 S.Ct. at 2483]; see Haggar Co. v. Helvering, 308 U.S. 389, 394 [60 S.Ct. 337, 339, 84 L.Ed. 340] (1940).

Watt v. Alaska, 451 U.S. 259, 265–67, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981) (footnote omitted). See also Consumer Products Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); Jones v. Metropolitan Atlanta Rapid Transit Auth., 681 F.2d 1376, 1378–79 (11th Cir.1982), cert. denied, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

■ When the meaning of a statute is not clear or is in conflict with another statute, resort to its legislative history is appropriate so that the statute may be construed in conformity with the intent of its drafters. Muniz, supra, 422 U.S. at 467–70, 95 S.Ct. at 2185–88. Additionally, an application of Section 294f(g) to all of Chapter 13 represents a substantial change from prior existing law with regard to educational loans. The provision, however, is consistent with and clearly applies to discharges under Sections 727, 1141 and 1328(b). This change is based on the fact that Section 523(a)(8), applicable to the aforementioned discharge provisions, is analogous to 42 U.S.C. Section 294f(g), which it replaced in 1979 after Section 294f(g) was repealed. Section 523(a)(8) already contained a comparable five year limitation test when Section 294f(g) was reenacted. Section 294f(g) compliments the Section 523(a)(8) undue hardship provision by adding the court determination of unconscionability of nondischarge, and a condition for nonwaiver of HHS' rights to apply 294f(f), relating to a reduction of federal reimbursements for health services.

■ Applying this limitation to Section 1328(a) would represent a significant departure from existing bankruptcy law. Further, to the extent that the "plain meaning" of a statute creates a conflict with another statute and disrupts a preexisting network of statutory provisions, reference to the legislative history is appropriate for assistance in determining congressional intent. See generally Train v. Colorado Public Interest Research Group, Inc., 426 U.S. 1, 9–10, 24, 96 S.Ct. 1938, 1942, 1948, 48 L.Ed.2d 434 (1976); Muniz, supra, 422 U.S. at 470, 95 S.Ct. at 2187.

■ In considering the meaning of the statutory terms at issue the Court notes that Congress can provide further definition to a statute by delegating legislative authority to the executive department charged with administering the statute in question. The Public Health Service of the Department of Health and Human Services has established rules regarding the rights and responsibilities of a HEAL loan borrower which are contained in 42 C.F.R.

§ 60.8 (1986). These rules were enacted pursuant to the authority granted in 42 U.S.C. Section 216 which provides that the Surgeon General, who administers the Public Health Service (Section 202), "shall promulgate all other regulations necessary to the administration of the [Public Health] Service...." The purpose of 42 U.S.C. Section 294, as stated in Section 294(a), is to enable the Secretary of HHS "to provide a Federal program of student loan insurance for students...." With respect to the student borrower, 42 C.F.R. § 60.8(b)(5) provides that "[a] borrower may not have a HEAL loan discharged in bankruptcy during the first 5 years of the repayment period."

The standards for determining the appropriate deference to be given such administrative regulations have been enunciated in cases reviewing the validity of the regulations as promulgated by an executive agency. Although the interpretation by an agency is normally entitled to considerable deference by the courts, this deference does not displace judicial analysis of the statute in question. *See Chemical Mfrs. Assoc. v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125–26, 105 S.Ct. 1102, 1107–08, 84 L.Ed.2d 90 (1985) (construing Clean Water Act, 33 U.S.C. § 1311(1)); *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981) (Truth in Lending Act).

Administrative regulations have been classified as follows: legislative regulations, which are defined as those rules issued by an agency pursuant to statutory authority to implement a statute, and interpretive regulations, which are issued pursuant to an agency's interpretation of a governing statute and without delegated legislative power. *See Fmali Herb, Inc. v. Heckler*, 715 F.2d 1385, 1387 (9th Cir.1983) (FDA construction of term within Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(s)). The degree of deference due an agency's interpretation of a statute varies with respect to whether its construction involves an expertise within that agency and a lack of judicial expertise. *See Frank Diehl Farms v. Secretary of Labor*, 696 F.2d 1325, 1329–31 (11th Cir.1983) (OSHA regulation construing term used in Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651, 653). Further, "an agency's interpretive rules are accorded less deference than its legislative rules." *Id.*, at 1329.

The Public Health Service is not authorized by 42 U.S.C. Section 294 to define the term "a discharge in bankruptcy under Title 11" and accordingly this Court concludes that 42 C.F.R. § 60.8(b)(5) is an interpretive regulation. This situation is very different from that in which Congress has delegated authority to an agency to explain a specific provision of a statute by regulation.[3] *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). As such, the weight to be given this agency interpretation by the Court must rest upon careful analysis. Further, although agencies may enjoy an expertise in dealing with technical issues within their jurisdiction, they do not enjoy a similar expertise in the area of statutory construction. *See Frank Diehl Farms, supra*, 696 F.2d at 1330.

In the present case, the statute in question, 42 U.S.C. Section 294f(g), is not such a complex statute that the interpretation by HHS is based on factual premises encompassed by special skills within that executive department, as it is established under the law. *Cf. Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Auth.*, 464 U.S. 89, 96–98, 104 S.Ct. 439, 443–45, 78 L.Ed.2d 195 (1983) (Civil Service Reform Act); *Frank Diehl Farms, supra*, 696 F.2d at 1329–30. In fact, the present circumstance concerns the application of a statute within the context of the bankruptcy laws and it is this Court

---

3. Compare, for example, *Chemical Mfrs. Assoc.*, 470 U.S. 116, 118 n. 2, 105 S.Ct. 1102, 1104 n. 2, in which the Court recognized the express statutory authorization that the Environmental Protection Agency define certain toxic pollutants and provide standards for their discharge.

which is entrusted to administer those laws as a judicial body. Finally, the Court notes that the reference in 42 C.F.R. § 60.8(b)(5) to bankruptcy discharge is not itself free from ambiguity and does not aid in the resolution of the present question. In addition, courts are not bound by agency interpretations which are inconsistent with legislative history since the judiciary is the final authority on issues of statutory construction. *Bureau of Alcohol, Tobacco and Firearms, supra,* 464 U.S. at 97–98, 104 S.Ct. at 444–45; *Chevron, U.S.A., supra,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781, n. 9. Accordingly, the Court finds and concludes that the interpretation given Section 294f(g) in 42 C.F.R. § 60.8(b)(5) provides insufficient guidance in the application of that statute to HEAL loans under 11 U.S.C. Section 1328(a).

▮ This Court concludes that an examination of the historical background surrounding the enactment of these statutes by Congress is necessary to determine properly how they are to be construed and applied in the present situation. Congress enacted Chapter 13 to provide an effective system for dealing with consumer bankruptcies and to encourage debtors to attempt to repay their debts under the supervision of bankruptcy courts. *Hall v. Finance One of Georgia, Inc. (In re Hall),* 752 F.2d 582, 590 (11th Cir.1985). As a further incentive Congress expanded the scope of the discharge to be granted upon successful completion of a plan.[4] *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 5, 118, 430 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 5966, 6079, 6386; S.Rep. No. 989, 95th Cong., 2d Sess. 12, 142, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5798, 5928; 123 Cong.Rec. H 11,690–92, H 11,696–710, IV–12 (daily ed.

October 27, 1977). Because a Chapter 13 repayment plan requires a greater commitment from a debtor, including future income, Congress provided the broader discharge to encourage debtors to choose this chapter rather than straight liquidation. *See generally Powell v. Illinois (In re Powell),* 29 B.R. 346, 350 (Bankr.D.Colo. 1983); *In re Smith,* 8 B.R. 543, 545–46 (Bankr.D.Utah 1981).

In one decision cited by HHS, the Bankruptcy Court for the Northern District of Illinois concluded that, although Section 294f pertained to Chapter 7, "but may or may not pertain" to debtors in Chapter 13, the debtor's confirmed ten (10%) percent composition plan lacked good faith and the court vacated its order of confirmation. *In re Langan,* Bankruptcy No. 82 B 15382 (Bankr.N.D.Ill. July 22, 1983). This decision turned on the issue of good faith and not a determination of nondischargeability of a HEAL loan by a Chapter 13 plan. HHS, however, abandoned the "good faith" issues in the present cases. The concern expressed by the court in *Langan* appears to have been alleviated by the addition of Section 1325(b) in the 1984 Amendments.[5] Further, the issue of good faith has been particularly and thoroughly discussed by the Eleventh Circuit in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983). These considerations were previously examined by this Court when debtors' Chapter 13 plans were confirmed.

▮ Further examination of the legislative history and congressional debates leading to the passage of the Bankruptcy Reform Act of 1978 supports the conclusion that Congress enacted Chapter 13 with an awareness of the difference of treatment of dischargeability of educational loans un-

---

4. This expansion of the discharge provision, as compared with Chapter 7, is demonstrated by the fact that debts obtained through conduct involving fraud or dishonesty may be discharged in an appropriate Chapter 13 case, though not in liquidation bankruptcy. *See generally Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 432 (6th Cir.1982); *see also Georgia Railroad Bank and Trust Co. v. Kitchens (In re Kitchens),* 702 F.2d 885 (11th Cir.1983) (dis-

cussing "good faith" requirement of proposed Chapter 13 plans).

5. This section provides that upon objection to a proposed plan by the trustee or an allowed unsecured claimant, the court may not approve the plan unless an equivalent value will be paid or all of the projected "disposable income" of the debtor to be received for for a three year period will be applied to make payments under the plan. *See also* Section 727(a)(9).

der Section 1328(a) and their limited nondischargeability under Chapter 7, 11 and Section 1328(b). Based on the prolonged consideration by Congress, the fact that educational loans are dischargeable under Section 1328(a) does not appear to have been due to omission or mistake. Instead the special treatment accorded these loans in Chapter 13 represents a deliberate policy choice by Congress.

Under old Chapter XIII of the Bankruptcy Act of 1898, the court granted a discharge upon completion of all payments to be made pursuant to the plan in Section 660, 11 U.S.C. Section 1060 (repealed 1979). This discharge, however, was subject to the exception in Section 17(a), 11 U.S.C. Section 35(a) the predecessor of Section 523(a). Educational loans were not excepted from discharge in this provision. An examination of the Act reflects that it was not until 1976 that these educational loans were excepted from discharges in certain instances.[6] These provisions for limited dischargeability were repealed in 1978 with the enactment of Section 523(a)(8) of the new Bankruptcy Code. *See* Bankruptcy Reform Act of 1978, §§ 317, 327, 402(d), 1978 U.S.Code Cong. & Ad.News (92 Stat.) 2549, 2678, 2679, 2682. Loans insured pursuant to 20 U.S.C. Section 1071 were specifically included in the exception from discharge in Section 17(a)(9) for a limited time pursuant to an amendment by H.R. 2807 on August 14, 1979. Act of August 14, 1979, Pub.L. No. 96–56, 1979 U.S.Code Cong. & Ad.News (93 Stat.) 387; 1 Collier on Bankruptcy ¶ 5.17[2] (15th ed. 1986).

The legislative background of the dischargeability of educational loans is at best unsettled. On July 30, 1973, the Commission on the Bankruptcy Laws of the United States presented a report and a proposed statute to Congress providing for a revision of the bankruptcy laws. H.R.Doc. No. 137, Pt. II, 93d Cong., 1st Sess. 136, 140, 212 (1973), *reprinted in* Appendix 2 *Collier on Bankruptcy* (15th ed. 1985). Under this bill certain debts would have been discharged upon completion of payments under a plan by a debtor with regular income. A hardship discharge was provided where payments were not completed. *See* Section 6–207(a), (b). The effect of both the general and the hardship discharge was similar since both provisions were subject to the exceptions to discharge in Section 4–506(a). Had the Commission bill been enacted, it would have continued the dischargeability of all debts except those specified in Section 4–506(a) which would have been the successor provision to Section 17(a) of the Act. This provision proposed to expand the exceptions to discharge of old Section 17(a) to include certain unpaid educational loans.

Several other bills were subsequently introduced and debated in which educational loans were not excepted from discharge. *See Matter of Scher*, 12 B.R. 258, 271 (Bankr.S.D.N.Y.1981). Congressman Don Edwards, along with the other members of the Subcommittee on Civil and Constitutional Rights, introduced an amended and reworked bill, H.R. 8200, 95th Cong., 1st Sess. (1977), on July 11, 1977. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 2–3 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963–65; *Scher, supra*, 12 B.R. at 271. This new bill, H.R. 8200, limited the discharge in Chapter 13 by excepting long-term debts and alimony and child support debts. H.R. 8200 § 1328(a), at 541. It did not except student loans from discharge in Section 1328 or in Section 523. *See* H.R.Rep. No. 595 at 129, 132, 363, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6090, 6093, 6318–19. Discussion in the House regarding the exception from discharge of educational loans, proceeded

---

**6.** Prior to passage of the Bankruptcy Reform Act of 1978, unpaid student loans were not subject to special exception from discharge under Section 17(a) of the Bankruptcy Act of 1898, 11 U.S.C. Section 35(a) (repealed 1979). *See* 3 *Collier on Bankruptcy* ¶ 523.18 (15th ed. 1986); 1 *Collier on Bankruptcy* ¶ 5.27[1] (15th ed. 1986). In 1976, however, Congress enacted a provision which added a five year limitation test. Education Amendments of 1976, Pub.L. No. 94–482, § 127(a), 1976 U.S.Code Cong. & Ad.News (90 Stat.) 2081, 2099, 2141 (codified at 20 U.S.C. § 1087–3(a) (repealed 1978)); Health Professions Educational Assistance Act of 1976, Pub.L. No. 94–484, § 401(b)(3), 1976 U.S.Code Cong. & Ad.News (90 Stat.) 2243, 2262–63 (codified at 42 U.S.C. § 294f(g) (repealed 1978)).

under the liquidation section of the House Report as distinguished from the Chapter 13 debt adjustment section. *Compare* H.R.Rep. No. 595 at 118, and 125. A controversial provision of this bill provided for the repeal of such exceptions to discharge as provided in 20 U.S.C. Section 1087–3 and 42 U.S.C. Section 294f. *See* H.R. 8200 § 316, at 592, § 326, at 596. In the House Report accompanying the bill, the repeal of these provisions was described as conforming with the general discharge provisions of Sections 523(a) and 727(a). H.R.Rep. No. 595 at 455, 457, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6410, 6412; *compare* S.Rep. No. 989, 95th Cong., 2d Sess. 163, 165 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5949, 5951 (accompanying Senate bill S. 2266).

The House Judiciary Committee specifically voted 4–23 to reject an amendment to H.R. 8200 making educational loans nondischargeable. *See* H.R.Rep. No. 595 at 132, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6093. After much argument and debate, an amendment was offered on February 1, 1978 by Congressman Allen E. Ertel which included a dischargeability exception for educational loans. *See* H.R. Debates, 124 Cong.Rec. 1783–98 (1978). The amendment passed on February 1, 1978, and was to be inserted as 11 U.S.C. Section 523(a)(8). This amendment, however, did not change the discharge exceptions in Section 1328(a) where a Chapter 13 plan was completed. The House passed this bill as amended and sent it to the Senate on February 8, 1978. 124 Cong. Rec. S 1582 (daily ed. Feb. 8, 1978).

The Senate enacted its own bill, S. 2266, 95th Cong., 1st Sess. 417, 577 (1977), which was similar to H.R. 8200. This bill was introduced on October 31, 1977 and excepted educational loans from discharge under Section 523(a)(8), but limited the discharge exception for the successful Chapter 13 plan as the House bill had done. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 79, 142 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5865, 5928–29. When this bill, adopted by the Senate as an amendment in the nature of a substitute to H.R. 8200, was sent back to the House, debate began

on the compromise bill. *See* 124 Cong.Rec. H 11,059, 11,089, 11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). The nondischargeability of certain educational loans was included in the final passage of the compromise bill in Section 523(a)(8) while the scope of the discharge in Section 1328(a) was left intact. *See* 124 Cong.Rec. S 17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

Congress approved the Bankruptcy Reform Act of 1978 on October 6, 1978 and the President signed the bill into law on November 6, 1978. After its enactment, Congress discovered that the repeal of certain nondischargeability provisions of the Higher Education Act, which includes 42 U.S.C. Section 294f, became effective November 6, 1978 but that the corresponding sections of the new Bankruptcy Code, in particular Section 523(a)(8), would not become effective until October 1, 1979. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, §§ 317, 327, 402(a), (d), 1978 U.S.Code Cong. & Ad.News (92 Stat.) 2549, 2678–79, 2682; *see also* 1 *Collier on Bankruptcy* ¶ 5.17, at 5–85 to 5–93, ¶ 5.27, at 5–123 to 5–127 (15th ed. 1986). As discussed earlier, H.R. 2807 was enacted on August 14, 1979 and Section 17(a)(8) was added (11 U.S.C. Section 35(a)(8)), to close this unintentional gap period. *See* S.Rep. No. 230, 96th Cong., 1st Sess., *reprinted in* 1979 U.S.Code Cong. & Ad.News 936.

On March 14, 1979, less than one year after the new bankruptcy reform legislation had been enacted into law, Senator Dennis DeConcini introduced Senate bill S. 658. S. 658, 96th Cong., 1st Sess. (1979). As stated in the House Report accompanying this bill, S. 658 was intended "to correct technical errors, clarify and make minor substantive changes to [the new Bankruptcy Code] Public Law 95–598...." H.R. Rep. No. 1195, 96th Cong., 2d Sess. 1 (1980). The bill passed the House, with further amendment, on September 22, 1980, and contained an addition to 11 U.S.C. Section 1328(a). *See* 126 Cong.Rec. 26,489, 26,494. This amendment would render student loan obligations nondischargeable "within the context of a Chapter 13 pro-

ceeding in the same manner as they are dealt with under Chapter 7...." H.R.Rep. No. 1195 § 130, at 26, 139 (accompanying S. 658).

In the House debate on September 22, 1980, Congressman Hyde described this provision in S. 658 as rectifying an "oversight." 126 Cong.Rec. 26,500 (1980). The Court notes that Congressman Edwards, who was an important actor in the enactment of the new Bankruptcy Code urged that the bill be adopted. *Id.*, at 26,499.[7] This reference to an "oversight" by Mr. Hyde, however, appears isolated and does not override the careful and comprehensive scheme devised by Congress regarding the breadth of the Chapter 13 discharge provision. *Compare Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); *Scher, supra,* 12 B.R. at 277–78 n. 68. On December 1, 1980, the Senate consented to an amended version of the bill, which included the amendment to Section 1328 in its Section 130. *See* 126 Cong. Rec. 31,154 (1980). The Senate, with further amendments, reintroduced the bill as S. 3259 and passed it after the House had consented to S. 658. During the remainder of the 96th Congress, the House did not act on the final changes made by the Senate and this bill was not enacted into law. *See* S.Rep. No. 150, 97th Cong., 1st Sess. 1–2 (1981) (accompanying S. 863).

On April 2, 1981 in the 97th Congress, Senator Robert Dole introduced a new bill, S. 863, which embodied all of the provisions of the previous bill, with some minor changes. S. 863, 97th Cong., 1st Sess. (1981). In Section 130, this bill amended the discharge provisions in 11 U.S.C. Section 1328(a) by including virtually all the exceptions to discharge listed under Section 523(a) which apply in liquidation cases. *See* S. 863 § 130, at 90; S.Rep. No. 150, 97th Cong., 1st Sess. 1–2, 19 (1981). This bill, though passed by the Senate, apparently died in the House and was not enacted into law.[8] The Court also notes that

this limitation on the Section 1328(a) discharge was not addressed by subsequent legislation recently enacted into law. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333; The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088.

The most recent enactment to the Code created a new Chapter 12. It is closely modeled after Chapter 13. In 11 U.S.C. Section 1228(a)(2), Congress specifically excepts from discharge "any debt—of the kind specified in Section 523(a) of this title." Congress obviously considered the issue in the context of Section 1328 and decided to change Section 1228(a)(2) but did not amend Section 1328(a). In enacting this 1986 statute Congress was presumably aware of the difference between Section 294f(g) and Section 1328(a) and (b) and thought it necessary to make Section 523(a) applicable to comparable Section 1228(a). *See generally Erlenbaugh v. United States, supra,* 409 U.S. at 243–44, 93 S.Ct. at 480–81. This evidences a recognition of the expansive discharge of Section 1328(a) and at least an inference of an intent by Congress for it to remain unaffected.

On August 13, 1981, the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 1981 U.S.Code Cong. & Ad.News (95 Stat.) 357, 919, was enacted into law and addressed the default of HEAL loans and their dischargeability in bankruptcy. The amended section, in Chapter 2—Health Professions Education, provides as follows:

Sec. 2730. Section 733(g) (42 U.S.C. 294f(g)) is amended to read as follows:

"(g) A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under title 11, United States Code, only if such discharge is granted—

"(1) after the expiration of the 5–year period beginning on the first date, as specified in subparagraphs (B) and (C) of

---

**7.** Though his reasoning is not recorded, Congressman Ertel, who originally proposed the student loan exception, had voted against S. 658 on July 28, 1980. 126 Cong.Rec. 19, 918–19.

**8.** After exhausting the research aids at its disposal, this Court is unable to find any written account of the specific disposition of this bill or the reasons therefor.

section 731(a)(2), when repayment of such loan is required;

"(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

"(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) to the borrower and the discharged debt.".

This enactment reinstated the five-year prohibition period as originally contained in Section 294f(g) before its repeal on November 6, 1978, the date of enactment of the Bankruptcy Reform Act of 1978, and added an unconscionability for nondischarge test, and non-waiver of rights to apply subsection (f) of Section 294f.

The stated purpose of the Omnibus Budget Reconciliation Act is the consideration of numerous spending reductions concerning the federal budget and covers nearly all governmental departments. *See* S.Rep. No. 139, 97th Cong., 1st Sess. 2 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad. News 396, 397. In examining the legislative history of this bill, the Court finds a reference to the HEAL loan program in the House Conference Report. H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 795, 805–06 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News 1010, 1157, 1167–68. HEAL loans are discussed in the context of an authorized appropriations limit for health planning, health facilities, health professions and nurse training programs. No reference or discussion is made, however, regarding 42 U.S.C. Section 294f(g), or its intended effect in the bankruptcy context.

In the voluminous Senate Report, these health programs were also discussed and it is mentioned that a phaseout of health planning is proposed along with ending the "large general subsidies for the training of physicians and other health professionals." S.Rep. No. 139, 97th Cong., 1st Sess. 878–79 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 901–02. The report also discussed student loans and reported the achievement of savings in the various programs. *Id.*, at 892–94, *reprinted in* 1981 U.S.Code Cong. & Ad.News 916–18. As in the House Conference Report, there

is no discussion concerning the intended effect of Section 294f(g) in the bankruptcy context.

Further, in Section 2334 of the Omnibus Budget Reconciliation Act, Congress enacted a specific amendment to 11 U.S.C. Section 523(a)(5)(A) and 42 U.S.C. Section 656 regarding the nondischargeability of certain assigned child support obligations. Section 2334(a) amended Section 456(a) of the Social Security Act (42 U.S.C. Section 656) stating that these obligations are "not released by a discharge in bankruptcy under title 11, United States Code." Section 2334(b) only amended Section 523(a)(5)(A) which Section 1328(a)(2) specifically incorporates. Given the lack of congressional expression and the fact that in amending the discharge provision only Section 523(a)(5)(A) was referenced, an inference may be drawn that amendment to the discharge provision in Section 1328(a) was to be made only to the extent it was affiliated with Section 523(a).

Finally, the Court has also examined other sources of legislative history regarding the Omnibus Budget Reconciliation Act, in Volume 127 of The Congressional Record. This record contains the various House and Senate discussions of the bill which occurred in June and July of 1981. The Court has not found any additional references to or discussion of the nondischargeability of HEAL loans or 42 U.S.C. Section 294f(g).

The circumstances surrounding the enactment of Section 294f(g) do not persuade this Court that Congress intended it as a limitation of the Section 1328(a) discharge. The extensive legislative history of the enactment of Section 1328(a) and the Bankruptcy Reform Act of 1978, in addition to subsequent repeated attempts of a proposed amendment to that section, reveals a congressional intention that the integrity of the scope of its discharge be preserved. The rejection of such amendments, regarding the nondischargeability of student loans, does provide an extrinsic aid in the interpretation of that statute. *See* 2A *Sutherland* § 48.18, at 341–42. The broad

and preemptive reading requested by HHS does not appear to be warranted.

In a related context, the Supreme Court has held that repeal by implication by an appropriations measure requires an affirmative showing of intention to repeal. *See Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 190–91, 98 S.Ct. 2279, 2299–2300, 57 L.Ed.2d 117 (1978). The Omnibus Budget Reconciliation Act provided a means by which Congress considered many spending reductions in one bill. *See* S.Rep. No. 139 at 2–4, *reprinted in* 1981 U.S. Code Cong. & Ad. News 397–98. This law was concerned solely with matters pertaining to the federal budget and savings through reductions in federal spending and as such was related to appropriations.

As discussed in *Gronski, supra*, 65 B.R. at 935, the Court expressly recognizes that Congress has the exclusive authority to establish any exceptions to the discharge provision of Section 1328(a). The Court further concludes, however, that the preservation of the scope of this discharge with respect to HEAL loans is more consistent with the intent of Congress. Without depreciating the rule that a later enacted statute controls, when two statutes conflict, ascertainment of actual congressional intent is not only proper but required before concluding that the statutes are irreconcilable. *See Watt v. Alaska, supra*, 451 U.S. at 266–67, 101 S.Ct. at 1677–78 (1981). Given the history surrounding the inclusion of defaults on student loans in the Section 1328(a) discharge, the Court concludes that Congress did not intend to create an exception to the Section 1328(a) discharge in reenacted Section 294f(g). Accordingly, this Court concludes that the literal interpretation of the term "Title 11" should not prevail in this instance because it would create a result contrary to the intentions of Congress.

An additional inquiry in ascertaining the proper construction of these statutes relates to the context and placement of the amendment reenacting Section 294f(g). This provision restructures the discharge test for HEAL loans from that provided in Section 523(a)(8). As noted before, Section 294f(g) was repealed in 1978 because student loan discharges were included under the new Bankruptcy Code in Section 523(a)(8). *See* 1 *Collier on Bankruptcy* ¶ 5.27, at 5–123 to 5–126 (15th ed. 1986). Reenacted Section 294f(g) can reasonably and logically be construed as referencing the standard under Section 523(a), which does not apply to Section 1328(a). A contrary interpretation would sharply alter existing law without explanation by Congress. As stated by the Supreme Court, Congress might be expected to comment on major changes in the law and although its silence might prove a treacherous guide to its intent, it is inconceivable that Congress would knowingly enact such a change without comment. *Watt v. Alaska, supra*, 451 U.S. at 271, 101 S.Ct. at 1680. Further, such a broad sweeping amendment, contained in a voluminous and complex statutory act such as the Omnibus Budget Reconciliation Act, which merely refers to the provision being amended, does not sufficiently specify where the amendment is to be affected and is a "blind" amendment. *See generally* 1A *Sutherland* § 22.16, at 219–20.

## CONCLUSION

Based on the above discussion, the Court concludes that 42 U.S.C. Section 294f(g) does not create a special exception to the dischargeability provision contained in 11 U.S.C. Section 1328(a) with regard to HEAL loans. The dischargeability of a HEAL loan pursuant to a confirmed Chapter 13 plan upon completion of all payments under the plan is governed by 11 U.S.C. Section 1328(a). This conclusion is consistent with congressional intent and purpose, as supported by an examination of the legislative history. Further, this construction gives effect to both statutes.

The respective debtors in the cases of *In re David Lee and Carole Lee*, *In re Paul Levine*, and *In re Jerry Hochman*, obtained confirmation of their Chapter 13 composition plans without objection by HHS, or previous holders of these claims. In each case at the time of filing, the debtor scheduled a holder of the HEAL

loan debt who was notified of the pending case. The current holder or a subsequent transferee of the note filed a proof of claim in each of the cases. None of these claimants, including HHS, objected to confirmation or appeared in opposition thereto.[9] After hearing and consideration of the proposed plan in each respective case, the Court concluded that the respective debtors had presented their plans in good faith, that the plans complied with the requirements of Chapter 13, and the plans were duly confirmed.

HHS did not file its motions to vacate confirmation order and modify plan to exclude HEAL loans until twelve months after confirmation in *Lee,* nine months later in *Levine,* and eight months later in *Hochman.* Revocation of an order of confirmation is authorized by 11 U.S.C. Section 1330(a) within 180 days (six months) following entry of such order, if the debtor procured the order through fraud. Thus, HHS has not timely moved for revocation of the respective orders of confirmation. Further, the Court finds that HHS based its motions on allegations of nondischargeability and lack of good faith and not fraud. Lastly, HHS abandoned all issues in these motions except the question of nondischargeability under 42 U.S.C. Section 294f(g).

■ Since a Chapter 13 debtor does not become eligible for discharge pursuant to 11 U.S.C. Section 1328(a) until the plan is fully consummated by payment, the discharge determination does not arise until the completion of all payments under the plan. Even if the Court concluded that 42 U.S.C. Section 294f(g) applied, the five year period of that statute may expire during the pendency of the case and the life of a particular plan. Thus a debtor might become eligible for discharge even under Section 294f(g) since plans generally continue

for a three to five year period. *See* 11 U.S.C. Section 1322(c).

■ The provisions of a confirmed plan bind the debtor and each creditor, whether or not such creditor is provided for or has objected to, accepted or rejected the plan. *Anaheim Sav. and Loan Ass'n v. Evans (In re Evans),* 30 B.R. 530 (Bankr. 9th Cir.1983); *Rhode Island Central Credit Union v. Zimble (In re Zimble),* 47 B.R. 639 (Bankr.D.R.I.1985); *Citicorp Homeowners, Inc. v. Willey (In re Willey),* 24 B.R. 369, 375 (Bankr.E.D.Mich.1982). Section 1327(a) precludes the assertion by a creditor of any other interest than that provided for in the plan, and has res judicata effect on issues of confirmation.

■ Accordingly, the Court finds and concludes that HHS is bound by the confirmed plans in *In re David and Carole Lee, In re Paul Levine,* and *In re Jerry Hochman.* The Court further concludes that 42 U.S.C. Section 294f(g) does not provide a limited nondischargeability for HEAL loans in these respective Chapter 13 cases.

■ The Court finds and concludes in the case of *In re William Schneider,* that no plan has been confirmed and based on the reasons set forth above, this debtor may provide for the treatment of his HEAL loan obligation as a part of his plan. HHS may contest the confirmability of the plan including the issues of good faith and compliance with the Bankruptcy Code.

■ Finally, in the case of *In re Michelle Alexander,* the Court confirmed the plan subject to determination of the issue of dischargeability of HEAL loan by debtor's composition plan. The Court concludes that 42 U.S.C. Section 294f(g) does not provide a limited nondischargeability of HEAL loans in this case. Accordingly, HHS is bound by the debtor's confirmed

---

9. HHS contends that the proofs of claim filed by Sallie Mae constituted an objection to discharge in its paragraph 11. While they abandoned this issue at the hearing, the Court notes that the purpose in filing a proof of claim is to present prima facie evidence of that claim under 11 U.S.C. Section 502(a). The statement in the instant proofs of claim that the claimant is unaware of facts that would support a discharge and therefore objects to discharge is not a sufficient objection to confirmation. A proof of claim, which is not generally served on all parties, is not a sufficient pleading in which to initiate a contested issue concerning the confirmation of a plan.

plan. Any further issues raised in these proceedings regarding these loans are rendered moot in view of the foregoing analysis and conclusions.

IT IS SO ORDERED.