**In the Matter of Jerry Dean BENNETT and Sylvia Jean Bennett, Debtors.**

**Jerry Dean BENNETT and Sylvia Jean Bennett, Plaintiffs,**

v.

**COMMERCE BANK OF INDEPENDENCE and Missouri Department of Education, Defendants.**

**Jerry Dean BENNETT and Sylvia Jean Bennett, Plaintiffs,**

v.

**MISSOURI WESTERN STATE COLLEGE, Defendant.**

Bankruptcy No. 83–02540–SJ–W.
Adv. Nos. 83–1118–SJ–W, 83–1119–SJ–W.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Feb. 13, 1984.

Daniel C. Hall, Aldridge & Hall, Kansas City, Mo., for plaintiffs.

Richard E. Standridge, Buck, Bohm & Stein, Kansas City, Mo., for Commerce Bank of Independence and Mo. Dept. of Educ.

No attorney for Mo. Western State College.

## ORDER CONSOLIDATING ADVERSARY ACTIONS FOR HEARING AND DETERMINATION AND FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE DECLARING DEFENDANTS' RESPECTIVE CLAIMS AGAINST PLAINTIFFS ON ACCOUNT OF FEDERALLY GUARANTEED EDUCATIONAL LOANS TO BE DISCHARGEABLE IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff debtors have filed these respective complaints for determinations of the dischargeability of federally guaranteed educational loans owed to the respective defendants. They contend that the respective loans are dischargeable in bankruptcy because their payment would mean a "hardship" to them and their dependents within the meaning of section 523(a)(8) of the Bankruptcy Code.

The two actions came on for hearing before the court on February 6, 1984. On oral motion of the parties then present and on the basis that the cases had questions of fact and law in common, the court issued its order orally consolidating the actions for trial and determination. The plaintiffs appeared personally and by counsel, Daniel C. Hall, Esquire. The defendants Commerce Bank of Independence and Missouri Department of Education appeared by counsel, Richard E. Standridge, Esquire. The defendant Missouri Western State College did not appear, although the files and records in this action demonstrate that they were timely and properly notified of the hearing.

The evidence which was then adduced demonstrated the following relevant and material facts. The plaintiffs, according to the following chart of their monthly income and expenses and income, demonstrated that their ordinary monthly expenses exceed their monthly income by some $58.98:

| | | |
|---|---|---|
| SALARY: | $762.00 | |
| | 7.44 | Federal withholding |
| | 754.56 | |
| | 51.05 | OASDHI (equivalent of Social Security) |
| | 703.51 | |
| | 6.14 | Missouri withholding |
| | 697.37 | |
| | 109.00 | health insurance |
| | 588.37 | |
| | .35 | group life insurance |
| TAKE HOME PAY: | 588.02 | |
| FOOD STAMPS | 200.00 | |
| NET INCOME | 788.02 | |
| | 125.00 | Rent |
| | 663.02 | |
| | 125.00 | transportation (gas, oil, repairs) |
| | 538.02 | |
| | 225.00 | utilities (gas, electricity, water, phone, range from $150 to $300 per month) |
| | 313.02 | |
| | 300.00 | food |
| | 13.02 | |
| | 20.00 | clothing (minimum) |
| | −6.98 | |
| | 52.00 | medical (minimum) daughter's diabetes medicine, $30.00; wife's visit to doctor, medicine, $22.00 |
| | −58.98 | |

The debtors have four children in the family home, the oldest of whom is 17 years of age. None of the children is employed. Mrs. Bennett is not employed and spends her time mainly in caring for the children. One of the children has diabetes, which requires the medical expenditures detailed above. Mr. Bennett is still working on a degree at Missouri Western State College,

but is not currently enrolled in classes. He is employed as a psychiatric aide in the St. Joseph State Hospital and has been so employed for the past five years or so. He works a nighttime shift. Until recently, he had a second job, but was laid off of that job because of the general economic plight of his employer. He has not been able to find any employment to replace this former employment. He has attempted to obtain jobs in the general field of his course of study at Missouri Western, computers; but, although he has tried every level of job application—programming, entry level and key punch—he has not been successful in finding another job. His testimony in the hearing of this action was that all the prospective employers to which he has made application have informed him that they desired both a degree and prior job experience with computers. According to the undenied allegations of the respective complaints, neither of the loans in question became due before five years of the filing of the within petition for relief. The balance due to Missouri Western State College is $900; the balance due to the Commerce Bank of Independence and the Missouri Department of Education is $5941.

In making its determination of "undue hardship," the bankruptcy court "must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living." *In re Wegfehrt*, 10 B.R. 826, 830 (Bkrtcy.N.D.Ohio 1981). According to the uncontradicted evidence in these actions, only future events could bring about a situation in which the debtors could make payments against the loan and not create an undue hardship on themselves or their dependents. For, according to the uncontradicted evidence, they continually suffer, at present, more in the way of monthly expenses than they receive in monthly income. When "(t)he debtor is spending more money per week than (he) takes in" and has dependents, it is "a classic hardship case." *Diaz v. New York State Higher Education Services Corp.*, 5 B.R. 253, 254 (Bkrtcy.W.D.N.Y.1980). But it is appropriate for the court to consider future probabilities and possibilities. See the Report of the Commission on the Bankruptcy Laws of the United States, H.R. DOC. No. 137, 93d. Cong., 1st Sess., II, 140, 141 (Appendix 2) (1973), to the following effect:

> "In order to determine whether non-dischargeability of the debt will impose an 'undue hardship' on the debtor, the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents at a minimal standard of living within their management capability, as well as to pay the educational debt."

The only potential for the future which has been specifically and expressly adverted to by the defendants is the possibility that the wife and mother, Sylvia Jean Bennett, could undertake employment, leaving her eldest daughter, who is 17 years of age, to care for the younger children. But this itself is to impose a hardship on the family of the debtors in terms of our traditional notions that parenting is best done by parents and that it should not ordinarily have to be done, if at all possible, by one or more of the children themselves. Further, there is no evidence from which it could be inferred that it would be likely that Mrs. Bennett could obtain employment of such promise that it would result in the clearing of $60 more per month in the way of net income after all the additional expenses of her going to work were subtracted. And certainly it is not shown that any appreciable excess could be realized from which significant payments could be made on the educational loans now under consideration.

Nor does it appear likely that, in the foreseeable future, Mr. Bennett will be able to complete his college training and secure employment in the computer field. If the family budget is really as dire as the uncontradicted evidence would show, the current family situation would not permit him to return to school until some of the children grow up and become self-sustaining. Under the current circumstances, and those which appear likely to persist for some time, it would almost be irresponsible of him to consume the money and time to return to school within the foreseeable future.

The court must, of course, observe that, once the determination of dischargeability is made, the defendants' claims are wiped out once and for all. Accordingly, this court has always been hesitant to make the hardship determination if there appears to be a potential of any excess at all in the debtors' budget, now or in the foreseeable future, which would permit some payment against the outstanding balance on the educational loan. See e.g., *Matter of Johnson*, 17 B.R. 95 (Bkrtcy.W.D.Mo.1981). The court must anticipate that, once the dischargeability determination has been made, the debtors may then deliberately overcome the former obstacles to gaining employment and more income. But this must be done carefully and without the extreme reaction of the jaundiced cynic. In the actions at bar, it seems that there is a classic case of hardship—a family with four young children, one of them seriously ill with diabetes, and a breadwinner whose current employment is not making ends meet and whose prospects, according to the *uncontradicted* evidence are bleak and likely to remain that way. It would appear that this is the type of case which the framers of the Bankruptcy Code had in mind when they created the "undue hardship" exception in section 523(a)(8) of the Code. For these reasons, it is therefore

ORDERED that these two actions be, and they are hereby, consolidated for trial and determination. And it is further

ORDERED, ADJUDGED, AND DECREED that the indebtednesses of the plaintiffs to the defendants in the respective sums of $900 and $5941, on account of federally guaranteed educational loans, be, and they are hereby, declared to be dischargeable in bankruptcy.