**In the Matter of Ricardo Manuel OSBORN, Debtor.**

**JUNIOR COLLEGE DISTRICT OF METROPOLITAN KANSAS CITY, Plaintiff,**

v.

**Ricardo Manuel OSBORN, Defendant.**

**Bankruptcy No. 86–04347–W–7–DJS. Adv. No. 86–0550–3.**

United States Bankruptcy Court, W.D. Missouri, W.D.

March 23, 1987.

Darry G. Sands, Kansas City, Mo., for plaintiff.

James B. Christensen, Raytown, Mo., for defendant.

## MEMORANDUM OF FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING COURT'S FINAL DECREE AND JUDGMENT

DENNIS J. STEWART, Chief Judge.

This is an action in which the plaintiff creditor seeks a decree of the bankruptcy court that the indebtedness of defendant to it on account of an educational loan granted or guaranteed by a governmental unit within the meaning of § 523(a)(8) of the Bankruptcy Code is nondischargeable in bankruptcy. The defendant has answered the complaint by stating that payment of the loan would impose an undue hardship upon him and his dependents. Trial of the issues thus joined came on before the bankruptcy court for hearing of their merits on March 20, 1987, in Kansas City, Missouri. The evidence which was then adduced by the parties warrants the following findings of relevant fact:

1. The plaintiff extended an educational loan to the defendant prior to the date of bankruptcy. The loan first became due, within the meaning of § 523(a)(8)(A) of the Bankruptcy Code, within five years of the date of bankruptcy.

2. The defendant utilized the proceeds of the loan to aid him in earning an Associate of Arts degree with a major in business from Longview Community Junior College.

3. The defendant is not now employed in the field of endeavor or type of vocation in which he received the abovementioned degree. Rather, he is currently employed as a school custodian.

4. The defendant has attempted to gain employment in the field of business in which he earned the abovementioned degree. His testimony has been uncontradicted to the effect that his attempts have not been successful for the reasons that the prospective employers applied to stated that they needed persons with more education, training and experience or else they stated no reasons.

5. Currently, the total sum of $1,711.00 is the balance due on the loan, including principal and interest thereon to the date of bankruptcy.

6. The evidence which has been presented to the court concerning the defendant's ability to pay shows that his monthly take-home pay ranges from $1,089 to $962.65, depending on the amount of

overtime which the defendant is able to work. The defendant states that he is unable to take a second job or to work more overtime because of his being the sole parent of two young children, aged 8 and 6, respectively. If he were to take a second job or work more overtime, his babysitting bills would increase and thereby offset a substantial portion of any increased income. Further, in order to do a proper job of parenting, he must spend at least the evenings with the children. He receives an annual raise. He receives no child support monies from his former wife.

7. The defendant claims that his average monthly expenditures are $1257 per month. His breakdown of those expenditures is set out in the marginal note.[1]

8. The monthly expenditures which are claimed by the defendant include the following which may not be adequately explained:

(a) $20 per month for medical and related expenses, which defendant characterizes as including "aspirin" and "whatever," i.e., ordinary medications where no long-term or serious illness is involved.

(b) $60 per month for recreation.

(c) The fact that monthly expenditures are stated, without explanation, to exceed monthly income, in each month, by $250–300 per month.

### Conclusions of Law

■ Section 523(a)(8) of the Bankruptcy Code pertinently provides that "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless ... excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." The test of "undue hardship" is ordinarily that of whether the debtor's balance sheet reflects a residual ability to pay the educational loan. The bankruptcy court "must determine whether there would be any-

thing left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living." *In re Wegfehrt,* 10 B.R. 826, 830 (Bkrtcy.N.D.Ohio 1981). When "[t]he debtor is spending more money per week than [he] takes in" and has dependents, it is "a classic hardship case." *Diaz v. New York State Higher Education Services Corp.,* 5 B.R. 253, 254 (Bkrtcy.W.D.N.Y.1980) "[I]t is appropriate for the court [also] to consider future probabilities and possibilities." *Matter of Bennett,* 38 B.R. 392, 394 (Bkrtcy.W.D.Mo.1984). "[T]he rate and amount of [the debtor's] future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents at a minimal standard of living within their management capability, as well as to pay the educational debt." Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess., II, 140, 141 (Appendix 2) (1973) "Accordingly, this court has always been hesitant to make the hardship determination if there appears to be a potential of any excess at all in the debtors' budget, now or in the foreseeable future, which would permit some payment against the outstanding balance on the educational loan." *Matter of Bennett, supra,* at 395; *Matter of Johnson,* 17 B.R. 95 (Bkrtcy.W.D.Mo.1981). Otherwise, the possibilities for abuse of this unusually beneficent loan program are all too great; and debtors are apt to achieve discharge of the loan indebtedness at a time prior to that when his educational attainments begin to produce their maximum potential. And, under all imaginable circumstances, it should be difficult for the bankruptcy courts to discharge an indebt-

---

1. See the attached schedule of expenditures    from the schedules.

edness which is owed to a program of such noteworthy benevolence.

■ On the other side of the scales are considerations of the debtor's ability to maintain a "minimal living standard," as stated above, for himself and his dependents. In the action at bar, the situation in which the debtor finds himself is one which generates considerable sympathy. He is a single, divorced man who has custody of two small daughters, aged 8 and 6, respectively. He receives no child support payments from his former wife. Nor is he likely, in the foreseeable future, to receive such monies when his former spouse, according to his testimony, now lives a vagabond type of existence, moving from state to state so as to avoid his requests for financial assistance.

Nevertheless, the balance sheet of monthly income and expenditures which has been testimonially submitted to the court by the debtor cannot be correct. The court cannot reward the debtor simply because, in the future, he proposes to spend $250 to $300 per month in excess of his take-home pay, including $60 per month for recreation and $20 for medical expenses, the necessity for which does not immediately appear. When these facts are considered in conjunction with the fact that the debtor should receive a raise of undisclosed magnitude later this year, this court cannot assume that the debtor would propose to spend $60 monthly for recreation and $20 for non-necessary medicines if he had no belief that he could afford to do so.[2] Further, the indebtedness sought to be discharged is small—$1711 in combined principal and interest, as noted above—and the minimal payment of $25 per month will result in its full payment in less than six years. Consequently, despite the undesirable circumstances in which the defendant finds himself, the court must enter the decree of nondischargeability on condition that plaintiff does not exact a payment of more than $25 per month.

**2.** The vice in this case is the obvious "padding" of the schedule of projected expenditures so that it is made clearly and decisively—and incredibly—for to outdistance income. Further, the evidence shows not only an undisclosed annual raise, but also the almost certain potential for a substantial income tax refund. "Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account." *In re Andrews,* 661 F.2d 702, 704 (8th Cir.1981)

APPENDIX

APPENDIX IV    Ricardo Manuel Osborn 86-0550-3

Schedule of Current Income and Current Expenditures (Individual) (Page 2)          Demaree Inc., P.O. Box 13705, Kansas City, Mo 64199

### 2. Expenditures

Give the following current monthly expenditures:

| | | |
|---|---|---|
| a. | Rent or home mortgage payment (include lot rental for trailer) | $ 157.00 |
| b. | Utilities (Electricity 70.00, Heat 60.00, Water 10.00, Telephone 60.00 ) | 200.00 |
| c. | Food | 360.00 |
| d. | Clothing | 160.00 |
| e. | Laundry and cleaning | 20.00 |
| f. | Newspapers, periodicals, and books (including school books) | 10.00 |
| g. | Medical and drug expenses | 20.00 |
| h. | Insurance (not deducted from wages) | |
| | (1) Auto | |
| | (2) Other | |
| i. | Transportation | 140.00 |
| j. | Recreation | 60.00 |
| k. | Dues, union, professional, social or otherwise (not deducted from wages) | 10.00 |
| l. | Taxes (not deducted from wages) | 20.00 |
| m. | Alimony, maintenance, or support payments | |
| n. | Other payments for support of dependents not living at home | |
| o. | Religious and other charitable contributions | |
| p. | Other (specify) Child care ( 2 children) | 100.00 (approx) |
| | **Total:** | $ 1,257.00 |

I, __Ricardo Manuel Osborn_____,

declare under penalty of perjury that I have read the answers contained in the foregoing schedule, and that they are true and complete to the best of my knowledge, information, and belief.

Executed on ___10/3/86___          Debtor ~Ricardo Manuel Osborn~