In re Paula Eubanks GREEN, Debtor.

UNITED STATES of America, Plaintiff,

v.

Paula Eubanks GREEN, Defendant.

Bankruptcy Nos. 84 B 15030, 86 A 0081.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 5, 1988.

---

Michael Wayne Smith, Chicago, Ill., for defendant.

Paula E. Green, pro se.

Anten Jalukas, U.S. Atty., William F. Murphy, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

## MEMORANDUM AND OPINION

ROBERT E. GINSBERG, Bankruptcy Judge.

### FACTS

On November 2, 1979 Paula Eubanks Green, (the "Debtor"), obtained a Health Education Assistance Loan, ("HEAL" loan), pursuant to the Health Professions Educational Assistance Act, 42 U.S.C. §§ 294f *et seq.* (the "Act"), in the amount of $6,362.00 plus interest from the Chase Manhattan Bank (the "Bank"). The Debtor used the loan to finance her attempted dental school education at Loyola University School of Dentistry. On or about February 3, 1981 the Debtor withdrew from Loyola without completing her dental degree, and to this day has never resumed her health profession education. The Debtor contends that she notified the Bank of her withdrawal from Loyola on June 13, 1981. The United States Department of Health and Human Services, ("HHS"), as assignee of the Bank's note, contends that the Debtor never sent notice of her withdrawal from dental school.

On April 5, 1984, the Bank declared the Debtor in default for failure to make any payments on the loan. On May 8, 1984, HHS purchased the note from the Bank for $10,517.00 pursuant to its agreement under the Act. On November 27, 1984, the Debtor filed a Chapter 13 petition under the United States Bankruptcy Code. The Debtor listed her HEAL loan as being owed to the Bank, not HHS. The Debtor's Chapter 13 plan was confirmed on January 8, 1985.

The Debtor is a single parent with three children ages 13, 10 and 4. The Debtor is an attorney currently employed as an Assistant Corporation Counsel for the City of Chicago at an annual salary of $22,500.

The Debtor's Chapter 13 petition indicates approximately $28,000 worth of debts, including the HEAL loan.[1] HHS filed a complaint to determine the dischargeability of the Debtor's HEAL loan. The Debtor, appearing *pro se,* filed a response asserting that she had met the requirements of 42 U.S.C. § 294f(g), and therefore her HEAL loan should be discharged. HHS then moved for summary judgment. After having reviewed all the pleadings and listened to counsel's arguments, HHS' motion for summary judgment is hereby granted for the reasons set forth below.

## DISCUSSION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), as a matter relating to determination of the dischargeability of particular debts.

A motion for summary judgment requires this Court to view the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits on file to determine whether there is a "genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56, Bankr.Rule 7056. The evidence must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Once the moving party has met its burden of establishing that there is no genuine issue of material fact, the opposing party bears the burden of setting forth specific facts showing that there is a genuine issue for trial. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir. 1983).

▮ The law in this Circuit is unequivocably clear. The dischargeability in bankruptcy of HEAL loans is governed by 42 U.S.C. § 294f(g) rather than by any provision of the Bankruptcy Code. *In re Johnson,* 787 F.2d 1179 (7th Cir.1986).[2] 42 U.S.C. § 294f(g) provides that:

a debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under Title 11, United States Code, 11 U.S.C. sections 101 *et. seq.,* only if such discharge is granted—

(1) after the expiration of the 5-year period beginning on the first date ... when such repayment of such loan is required;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the secretary shall not have waived the secretary's rights apply subsection (f) to the borrower and the discharged debt.[3]

Thus, under section 294f(g), a HEAL loan may not be discharged unless three conditions are satisfied, i.e., five years have expired from the date the repayment period begins, the bankruptcy court has found that a failure to discharge the HEAL loan would be unconscionable, and the Secretary of HHS has not waived certain rights found in section 294f(f).[4] *In re Johnson,* 787 F.2d 1179, 1181 (7th Cir.1986).

The parties have spent considerable time and effort presenting arguments to this court regarding the precise date on which the five-year period began to run under the facts of this case. The Debtor contends that it began to run on June 13, 1981, the date on which she claims that she notified the Bank of her withdrawal from dental school. HHS contends that the five year

---

1. The Debtor's answer to HHS' complaint to determine dischargeability references another $8,400 of debt, presumably postpetition.

2. *But see In re Lee,* 71 B.R. 833, 15 B.C.D. 1041 (Bankr.N.D.Ga.1987).

3. Subsection (f) reads as follows:
   The Secretary may, after notice and opportunity for a hearing, cause to be reduced Federal reimbursements or payments for health services under any Federal law to borrowers who are practicing their professions and have defaulted on their loans insured under this subpart in amounts-up to the remaining balance of such loans. 42 U.S.C. § 294f(f).

4. The parties have agreed that the last requirement of section 294f(g), that the Secretary of HHS must not have waived certain rights, is not applicable to the Debtor's loan because the Debtor's failure to complete her professional dental education program prevents her from practicing as a health professional.

period did not begin to run until March 1, 1983, when the Bank demanded repayment on the Debtor's loan.

■ Neither party, however, has addressed the issue of when the five year period expires in order for the HEAL loan debt to be eligible for a determination as to dischargeability in bankruptcy. Section 294f(g)(1) absolutely prohibits discharge of a HEAL loan debt prior to the expiration of the five year period commencing with the first date on which repayment is due. The question of when the five year period expires is as critical as the question of when it begins. A Chapter 13 case presents peculiar problems with respect to this question because a period of well over five years may pass between the filing of a Chapter 13 petition and the completion of a Chapter 13 plan.[5] The question, therefore, is whether there is some particular date in the course of the Chapter 13 case by which time the requisite five year period must have run in order for the debt to be dischargeable under any analysis.

There are at least four possible relevant dates when the five years could expire in a Chapter 13 case: (1) the date on which the Chapter 13 petition is filed; (2) the date on which a complaint to determine dischargeability is filed; (3) the date on which the Chapter 13 Plan is confirmed; and (4) the date of discharge upon completion of the Chapter 13 plan.[6] The effect of the differences between these dates on the question of whether the five year period has expired is obvious.

There is precious little case law addressing the identification of an expiration date of the five year period under section 294f(g)(1) in the bankruptcy context in general and in Chapter 13 in particular. Furthermore, the courts which have addressed this question are in disagreement and offer two possible approaches. The first approach is to give literal meaning to the words found in § 294f(g)(1) and focus upon

the date of discharge upon completion of the debtor's Chapter 13 Plan. *In re Gronski*, 65 B.R. 932, 936 (Bkrtcy.E.D.Pa.1986). In *Gronski* the court stated that "a bankruptcy discharge may impact upon a HEAL loan if the *discharge* is granted five (5) years after the first date the payment is required." *Id.* (emphasis in original). Therefore, if the debtor's discharge upon completion of the plan would be granted more than five years after the first date repayment was due, then the threshhold five year requirement of section 294f(g)(1) would be met, and the court would be able to consider the dischargeability of the HEAL loan debt. *Id.*

The second approach is to construe the provisions of section 294f(g)(1) as meaning that the bankruptcy court is precluded from even considering the issue of dischargeability of the HEAL loan debt until after five years have expired from the date on which the first repayment was due. *See In re Cleveland*, 64 B.R. 810, 812 (Bkrtcy. S.D.Cal.1986); *In re Hampton*, 47 B.R. 47, 49 (Bkrtcy.N.D.Ill.1985). In *Hampton*, the debtor's repayment period commenced on November 1, 1982. In holding that the HEAL loan was nondischargeable, the court reasoned that under the provision of 42 U.S.C. § 294f(g)(1), the court was precluded from considering the dischargeability of the loan prior to November, 1987, when the five year period would expire. *Id. Accord Cleveland* at 812.

■ Logic suggests that the date which should control is the date on which the complaint to determine dischargeability is filed. The Bankruptcy Code student loan nondischargeability provision, 11 U.S.C. § 523(a)(8), freezes its five year determination as of the date of the petition. *See* 11 U.S.C. § 523(a)(8). 42 U.S.C. § 294f(g) contains no similar language. Therefore, it is logical to infer that the five year period for HEAL loan dischargeability purposes continues to run even after the petition is filed. *Cf.* 11 U.S.C. § 108. Since the five year

---

5. *See* 11 U.S.C. § 1322(c), permitting a Chapter 13 plan to run up to five years from *confirmation.* (Emphasis added). Confirmation may take place in a Chapter 13 case well after the petition is filed.

6. *See* 11 U.S.C. § 1328(a).

period had not run at the time this complaint was filed, even on the Debtor's theory of a starting date, HHS must prevail. *See Hampton, supra.*

However, since there is one more expiration date that conceivably might be viewed as applicable for measuring the expiration of the five year period, the date of this decision, and since, under the Debtor's analysis of a starting date the five years has run by the time of this decision, the Court will turn to the question of unconsionability.

As to the unconscionability standard, the Debtor contends that in determining the dischargeability of HEAL loans, students who have not completed their health professional degrees should not be held to the unconscionability standard of section 294f(g)(2). Instead, the Debtor argues that students in this category should be held to the lesser standard of "undue hardship" which is applied in determining the dischargeability of other student loans under 11 U.S.C. § 523(a)(8).

This argument is entirely illogical. The plain reading of 42 U.S.C. § 294f requires that *all* HEAL loans recipients meet the standards of section 294f(g) in order to receive a discharge of that debt in bankruptcy. Therefore, since the debtor is a HEAL loan recipient, and the unconscionability standard applies to all HEAL loans regardless of whether the student borrower has completed a health professional education, the unconscionability standard must be applied in determining whether the Debtor is entitled to a discharge of her HEAL loan. *In re Hines,* 63 B.R. 731 (Bkrtcy.D.S.D.1986).

In *Hines,* the court determined that it was not unconscionable for the debtor to repay an $11,274.51 HEAL loan. *Hines* is of particular import not only because of the court's discussion regarding the appropriate test for determining unconscionability, but also because of the striking similarity between the facts in *Hines* and those in the present case. The debtor in *Hines* had obtained a HEAL loan for medical school but failed to complete his degree. He was in good health, married, and had two young children. His annual salary was approximately $2,000 which he earned as, among other things, a bartender. His wife earned approximately $7,000 a year.

In addressing the unconscionability standard of section 294f(g), the *Hines* court considered two factors. First the plain meaning of the term "unconscionable," which Webster's Dictionary defines as "lying outside the limits of what is reasonable or acceptable" or "shockingly unfair, harsh, or unjust." Webster's Third New International Dictionary 2486 (3d ed. 1981). Second, the court considered the underlying policy of what is unconscionable in a sales setting. *Id.* The court then stated that unconscionable under section 294f(g) requires a higher standard than a finding of undue hardship under 11 U.S.C. § 523(a)(8) and that what is unconscionable in a bankruptcy context defies precise definition and is better left to the discretion of the Bankruptcy Judge. *Id.* In applying this standard, the *Hines* court held that the HEAL loan debt was nondischargeable because it would not be unconscionable to require the debtor to repay the loan. *Id.* In addition, the *Hines* court noted that the debtor had not even met the standard of undue hardship. *Id.*

As stated above, the facts in the present case are very similar to those in *Hines.* This Debtor in this case has three children, is in good health, and will have no substantial outside debts following completion of her Chapter 13 case. In fact, this Debtor is in a substantially better position than Hines. She is not a bartender. She is a licensed practicing attorney with a family income equally twice as much as that of the debtor's family in *Hines.* Furthermore, her career prospects appear to be excellent.

Viewing the evidence presented in a light most favorable to the Debtor, this Court cannot possibly conclude that it would be unconscionable to require a healthy practicing attorney to repay this type of debt. The Debtor has submitted no affidavits, depositions or other evidence suggesting any facts which would indicate that there is any fundamental or shocking unfairness in

requiring her to repay her HEAL loan. Thus, there is no issue of fact on the question of whether making the Debtor repay the HEAL loan would be unconscionable. The unrefuted evidence is clear and convincing that it would not. In fact, it is even difficult to conclude that repayment of this loan would in any work an undue hardship or, any hardship on the Debtor.

The HEAL loan interest is reasonable, and it is possible that the debtor can take as long as twenty-five (25) years to repay the loan. The Debtor is gainfully employed by the Corporation Counsel for the City of Chicago and earns an annual salary of $22,500. Therefore, the debt is nondischargeable at this time. However, should the Debtor's circumstances change, the Court believes that the question of unconscionability can be redetermined in any future bankruptcy case the Debtor may file. *See* 11 U.S.C. § 523(b).

For the foregoing reasons this Court hereby grants summary judgment in favor of HHS.