**In re Anne E. OWENS, Debtor.**

**Bankruptcy No. 85B8997.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 9, 1988.

Laurence Alan Stefans, Stefans, Stefans & Stefans, Chicago, Ill., for debtor.

Anton Valukas, U.S. Atty., Mary S. Rigdon, Asst. U.S. Atty., Chicago, Ill., for U.S. Dept. of Health & Human Services.

## OPINION

ROBERT E. GINSBERG, Bankruptcy Judge.

The issue in this Chapter 13 case arises from Anne E. Owens', ("the Debtor"), un-

successful attempts at becoming a medical doctor. In 1978 the Debtor was admitted to and enrolled in the University of Chicago Pritzker School of Medicine. She financed her medical education through a scholarship agreement with the National Health Service Corps., ("NHSC"). Under the agreement the NHSC agreed to pay for the Debtor's medical education in exchange for her promise to serve one year in the NHSC for each year she received the scholarship. The NHSC scholarship would pay for the Debtor's tuition, fees such as lab fees, and provide her with a monthly living stipend. During the Debtor's first year of medical school, (1978–1979), she suffered great anxiety and sought psychiatric help. The Debtor concluded that the stress of medical school was too great for her to continue her studies, and she took a one-year leave of absence from school. During this year she took a job as a coordinator for a radiation therapy clinic. However, the pressures of that job were more than she could bear, and after only four months she resigned.

In the fall of 1981 the Debtor resumed her medical studies. This second attempt at medical school was no more successful than the first. After two months, the Debtor was still unable to handle the mounting pressure, and she dropped out of medical school again. On November 19, 1981, the Department of Health and Human Services, ("HHS"), which supervises the NHSC program, received official notification from the University of Chicago that the Debtor had terminated her medical school education.

It is undisputed that when the Debtor quit medical school she breached her scholarship agreement with NHSC.[1] The scholarship agreement provides that if individuals voluntarily terminate their education they become liable for the money received under the scholarship award. 42 U.S.C. § 254o(a)(3). Under HHS regulations, the Debtor's scholarship debt in the amount of $17,256.06 was to be paid in full within three years of the official breach date, i.e., by May 3, 1985. 42 C.F.R. § 62.10(b).

On August 21, 1984 the Debtor requested that HHS waive her scholarship debt based upon emotional and financial hardship. 42 U.S.C. § 245o(c)(2). The Debtor contended that during the previous two years she had earned less than $7,200 a year, and she simply could not afford to pay HHS what she owed it. HHS denied her waiver request, on the grounds that the Debtor's financial condition could significantly improve in the future. HHS suggested that the Debtor resubmit her request for a waiver in April of 1985. In addition, the Debtor was encouraged to begin making payments to reduce her principal balance because any balance remaining after May, 1985 would begin to accrue interest.

In May, 1985, HHS requested that the Debtor make payments of $100 a month. Due to the loss of one of her part-time jobs the Debtor was unable to meet this request. HHS revised the repayment agreement to reduce monthly payments to $62.50. The Debtor made two payments pursuant to the revised agreement in June and July of 1985. In July of 1985 the Debtor filed a Chapter 13 petition.

In addition to the approximately $17,000 owed to HHS, the Debtor has two other education loans outstanding. The Debtor owes $4,390 to the University of Chicago and $5,100 to the United States Department of Education. The total amount of the Debtor's unsecured debt, all of which is educational, is approximately $27,000. The Debtor has no secured creditors.

The Debtor's monthly net income is $575.00, and her monthly expenses are $475.00. The Debtor therefore has a monthly surplus of $100.00, which she proposes to pay to the Chapter 13 trustee for fifty months under her proposed Chapter 13 plan. Unsecured creditors under the proposed plan will receive fifteen percent of their allowed claims.

---

1. The Debtor actually breached the scholarship agreement on December 3, 1981, the date she left school. However, due to an administrative delay, the Debtor was given an official breach date of May 3, 1982 by HHS.

HHS has objected to the confirmation of the Debtor's plan on two grounds. The first ground is that the debt owed to HHS is not dischargeable. This objection is premised on 42 U.S.C. § 254o(c)(3), which provides that a debt of the type owed by the Debtor is not dischargeable for five years after the first date payment was due.[2] HHS' second objection is that the Debtor has not proposed her plan in good faith.

■ As to HHS' first objection, the initial question to be answered is whether the debt the Debtor owes HHS is in fact non-dischargeable in a Chapter 13 case. As a general rule, a Chapter 13 discharge operates to discharge a debtor from all debts provided for in the plan except certain family obligations, certain long term debts that have been assumed and cured under the plan, and certain postpetition debts. 11 U.S.C. § 1328(a), (d). Beyond these few exceptions, it is clear that a Chapter 13 discharge does operate to discharge a debtor from otherwise nondischargeable debts, including most student loan obligations. *See generally In re Estus,* 695 F.2d 311 (8th Cir.1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Sanabria,* 52 B.R. 75 (N.D.Ill.1985). *Compare* 11 U.S.C. § 523(a)(8). There is no exception found in Chapter 13 for the type of federal claim in issue here. Therefore, it would appear on cursory analysis that the obligation in question would be included within this Debtor's Chapter 13 discharge, should she eventually get one. However, 42 U.S.C. § 254o(c) purports to apply to all cases under Title 11, including Chapter 13. Therefore, the question becomes which one of these conflicting provisions, 11 U.S.C. § 1328 or 42 U.S.C. § 254o(c), governs.

■ Some suggestion of an answer to this question can be found in the cases analyzing a similar provision, 42 U.S.C. § 294f(g). Section 294f(g) provides that education loans are dischargeable in cases under Title 11 only in certain very narrowly defined circumstances.[3] As with the provision at issue in this case, 42 U.S.C. § 294f(g) appears on its face to apply in Chapter 13 cases and thus apparently conflicts with the broad discharge ordinarily granted to Chapter 13 debtors. A number of courts have considered the conflict between 11 U.S.C. § 1328 and 42 U.S.C. § 294f(g). Most courts that have considered the question have concluded that 42 U.S.C. § 294f(g) controls in Chapter 13 cases. *In re Johnson,* 787 F.2d 1179 (7th Cir.1986); *In re Hampton,* 47 B.R. 47, 50 (Bankr.N.D.Ill.1985). *See also In re Gronski,* 65 B.R. 932 (Bankr.E.D.Pa.1986). *But see In re Lee,* 71 B.R. 833 (Bankr.N.D.Ga. 1987). However, because of differences in the legislative history of the two provisions, the analysis which leads to the conclusion that 42 U.S.C. § 294f(g) applies in Chapter 13 cases does not necessarily lead to the conclusion that 42 U.S.C. § 254o(c) also must apply in Chapter 13 cases. Section 294f(g) was actually repealed by the Bankruptcy Reform Act of 1978. Pub.L. 95–598 (1978). It was reenacted by Congress in 1981. Act of August 13, 1981, Pub.L. 97–35, title XXVII, § 2370, 95 Stat. 919. Therefore, it appears that Congress intended that provision to supercede 11 U.S.C. § 1328. *Hampton,* 47 B.R. at 50.

Conversely, section 254o(c) was not repealed by the Bankruptcy Reform Act of 1978. It was simply left in place by that law. This Court concludes that the failure

**2.** 42 U.S.C. § 254o(c)(3) provides:
"Any obligation of an individual under the Scholarship Program (or contract thereunder) for payment of damages may be released by a discharge in bankruptcy under Title 11 only if such discharge is granted after the expiration of the five-year period beginning on the first date that payment of such damages is required."

**3.** 42 U.S.C. § 294f(g) (1981) provides:
A debt which is a loan insured under the authority of this subpart may be released by a

discharge in bankruptcy under Title 11 only if such discharge is granted—
(1) after the expiration of the five-year period beginning on the first date ... when repayment of such loan is required; and
(2) upon a finding by the Bankruptcy Court that the nondischarge of such would be unconscionable and;
(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

to repeal section 254*o*(c) in 1978 was significant in light of the fact that Title III of the 1978 law specifically repealed a large number of other federal statutes which Congress regarded as inconsistent with the 1978 law, including the somewhat similar 42 U.S.C. § 294f(g). Therefore, Congress must have intended to leave 42 U.S.C. § 254*o*(c) in place and to have it apply by its literal terms to all cases under Title 11, including Chapter 13 cases.

■ However, the conclusion that 42 U.S.C. § 254*o*(c) controls in Chapter 13 cases does not end this discussion. Instead, it merely begins the analysis. It is not at all clear that because the Debtor's obligation to the HHS might not be discharged at the conclusion of her Chapter 13 plan, the plan should not be confirmed. A finding that the Debtor's obligation is nondischargeable would only result in the Debtor owing the government any unpaid balance after she emerged from Chapter 13. Such a result is not prohibited per se by the Bankruptcy Code. HHS' claim is not entitled to priority over the Debtor's other unsecured obligations. Therefore, there is no requirement that the HHS claim be paid in full over the life of the plan in order for the plan to be confirmed. *Contrast* 11 U.S.C. § 1322(a).

■ More importantly, HHS has not asked the Court at this time to determine the dischargeability of its claim. Since nothing in the Bankruptcy Code or Rules requires a creditor to await the grant of a discharge before seeking the determination of the dischargeability of its claim, HHS could seek a determination of dischargeability at this time. *See* Bankruptcy Rule 4007. However, to a large measure, it

would be premature for it to do so. Confirmation of a Chapter 13 plan does not work to discharge the debtor. *Contrast* 11 U.S. C. § 1141(d). A Chapter 13 debtor does not receive a discharge until completion of the payments called for by the plan. 11 U.S.C. § 1328(a). Therefore, the question of whether the Debtor should be discharged from this particular debt will only be of issue if and when the Debtor gets a discharge on completion of her Chapter 13 plan some fifty months or more hence.[4]

Finally, the fact is that this debt is not dischargeable at this time, but might be dischargeable at the completion of the Debtor's Chapter 13 plan, assuming five years has then run from the date payment was first due at the time she receives her Chapter 13 discharge. *Cf. In re Green*, 82 B.R. 955 (Bankr.N.D.Ill.1988). Such a result does not per se lead to denial of confirmation of this plan. HHS has cited no case so holding, and this Court knows of none. Indeed, the Bankruptcy Code seems to specifically recognize in other contexts that debts not dischargeable at one point in time might become dischargeable at other points in time due to the expiration of relevant statutory periods. *See* 11 U.S.C. § 523(b).

The more relevant issue at this stage of this case is that raised by HHS' alternative ground for objecting to confirmation of the Debtor's plan, good faith. This objection requires the Court to not only examine the nature and dischargeability of HHS's claim, but to also review the Debtor's overall motivation and sincerity in filing a Chapter 13 petition.

■ HHS argues that the Debtor's proposed plan exhibits bad faith.[5] There are

---

**4.** If the Debtor defaults under the plan, the Court may grant her a "hardship discharge." 11 U.S.C. § 1328(b). A hardship discharge under 11 U.S.C. § 1328(b) does not discharge any debt enumerated in 11 U.S.C. § 523(a) including any debt, "to governmental unit, or a nonprofit institution for an educational loan...." 11 U.S.C. § 523(a)(8). It is not necessary at this time to determine whether or not the scholarship debt could be characterized as an educational loan within the context of 11 U.S.C. § 523(a)(8). If it is not a section 523(a)(8) education loan then

the scholarship debt would be dischargeable in a hardship discharge.

**5.** HHS bases its allegations on the checklist of factors put forth by the Eighth Circuit in *Estus, supra*. However, while the checklist of factors is helpful in making a determination of bad faith, it is not exhaustive and is intended merely to aid the bankruptcy courts as they determine on a case-by-case basis whether debtors have proposed Chapter 13 plans in good faith. *See In re Kitchens*, 702 F.2d 885 (11th Cir.1983); *Rimgale, supra*.

three factors [6] which HHS contends are indicative of the Debtor's bad faith: first, the amount of the proposed payments under the plan and the amount of the Debtor's surplus; second, the Debtor's employment history, ability to earn and likelihood of future increased in income and third, the type of debt sought to be discharged and the nondischargeability of such debt in Chapter 7. The Seventh Circuit has held that a comprehensive definition of good faith is impractical and that good faith must be determined on a case-by-case basis. *Rimgale,* 669 F.2d at 431.

■ The first factor that HHS alleges is indicative of the Debtor's lack of good faith is the amount of the proposed payment and the amount of the Debtor's surplus. The Debtor's proposed plan indicates that she is to make monthly payments of $100.00 for the next fifty months. The Debtor's Chapter 13 statement reveals that this is one-hundred percent of the Debtor's surplus income. This fact suggests the Debtor's good faith. *Cf. Sanabria, supra.* The Debtor's proposed plan is not insubstantial merely because only fifteen percent of the debt is to be repaid. *See In re Canda,* 33 B.R. 75 (Bankr.D.Or.1983). The Seventh Circuit has specifically stated that a plan that fails to pay unsecured creditors an arbitrary minimum percentage of their claims is not per se bad faith. *Rimgale,* 669 F.2d at 431–32. *See also In re Myers,* 52 B.R. 248 (Bankr.M.D.Fla.1985). There-

fore, because the debtor will pay one-hundred percent of her surplus income for the next fifty month, this Court cannot conclude that the Debtor's plan has been proposed in bad faith.

■ The second factor that HHS alleges indicates the Debtor's bad faith is her employment history, ability to earn, and the likelihood of future increases in income. The Debtor's employment history reveals an inability to handle stress which has resulted both in her departure from medical school and in her resigning her position as a coordinator for a radiation therapy clinic. In addition, the Debtor's recent employment history reveals a series of part-time jobs which are neither lucrative nor stable. This Court reasonably concludes that the Debtor's inability to handle stress and her part-time employment do not indicate an ability to earn enough now to pay significantly more on her unsecured debts than she is proposing to pay under her Chapter 13 plan.

Furthermore, the Debtor's inability to handle stress and her part-time employment militate against the conclusion that she has the likelihood of increasing her income in the future. In general, a debtor's ability to earn more in the future has been important in determining the bad faith of a recent graduate of graduate school who is seeking to discharge his/her educational loans.[7] In the present case the

6. The Eighth Circuit's list of relevant factors:
   1. The amount of the proposed payments and the amount of the debtor's surplus;
   2. The debtor's employment history, ability to earn and likelihood of future increases to income;
   3. The probable or expected duration of the plan;
   4. The accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
   5. The extent of preferential treatment between classes of creditors;
   6. The extent to which secured claims are modified;
   7. The type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;
   8. The existence of special circumstances such as inordinate medical expenses;

9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act.
10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and
11. The burden the plan's administration would place upon the trustee.
*Estus,* 695 F.2d at 317.

7. *Compare Sanabria, supra,* (newly graduated physician's proposed plan was denied for lack of good faith because his future income would certainly increase), *with In re Dos Passos,* 45 B.R. 240, (Bankr.D.Mass.1984) (the court confirmed a debtor's proposed plan which proposed to pay only ten percent of primarily educational unsecured creditors even though the debtor's professional status as a dentist indicated a potential for future increases in income, because the debtor's employment history had not been marked by success).

Debtor never completed her medical school education, and there is substantial uncertainty that the Debtor's income will increase.

■ However, even accepting the premise that the Debtor does have the likelihood of future increases in income, this Court sees no reason why this factor alone should prevent confirmation of the proposed plan. The Bankruptcy Code specifically permits unsecured creditors to seek post-confirmation modifications of debtors' plans. 11 U.S.C. § 1329(a).[8] This Court does not discount the likelihood of future increases in income. However, when there is uncertainty as to the Debtor's future income and where HHS as an unsecured creditor has the ability to seek post-confirmation modifications of the plan should the Debtor's situation improve markedly over the life of the plan, the Court sees no reason to reject the proposed plan. The Debtor's unstable employment history, lack of significant ability to earn, and the uncertainty of future increases in income indicate that the Debtor has not proposed the Chapter 13 plan in bad faith. On the contrary these very facts indicate that Chapter 13 relief is requested by the Debtor to get her life back in order.

■ Finally, HHS contends that the Debtor's proposed plan is proposed in bad faith because the scholarship debt is nondischargeable under Chapter 7. This Court disagrees with HHS for two reasons. First the scholarship debt is dischargeable in both Chapters 7 and 13 once the five years has run. Second, even if the debt were nondischargeable in Chapter 7, this fact alone is insufficient in and of itself to base a finding of bad faith or deny confirmation

of the proposed plan. *See* discussion, *infra*.

With regard to the first reason, the Public Health Safety Act specifically provides that the scholarship debt "may be released by discharge in bankruptcy under Title 11...." 42 U.S.C. § 254*o*(c)(3). The only condition placed upon dischargeability of NHSC scholarship debts is that the debtor receive his/her bankruptcy discharge more than five years from the first date that payment is due. *Id.* The scholarship debt is dischargeable in Chapter 7 with this one condition. This is substantially different from the treatment afforded other governmental loans such as HEAL loans which are nondischargeable in both Chapter 7 and Chapter 13 unless the five years has run at discharge *and* the Court finds requiring repayment would be inconscionable. 294f(g), *Johnson, supra.*[9]

With respect to the second reason, even if the scholarship debt is nondischargeable under Chapter 7, this Court will not base a finding of bad faith or deny confirmation of the proposed plan on that fact alone. *In re Makarachuk,* 76 B.R. 919 (Bankr.N.D.N.Y. 1987); *In re Kourtakis,* 75 B.R. 183 (Bankr.E.D.Mich.1987); *In re Kazzaz,* 62 B.R. 308, 312 (Bankr.E.D.Va.1986); *In re Street,* 55 B.R. 763, 764–65 (9th Cir. BAP 1985). *Cf. Johnson v. Edinboro State College,* 728 F.2d 163, 166 (3d Cir.1984); *Estus* at 314; *In re Klein,* 57 B.R. 818 (9th Cir. BAP 1985). In enacting Chapter 13, Congress intended to encourage its use and thus intentionally made the discharge provisions more liberal than those contained in Chapter 7. *Rimgale,* 669 F.2d at 428. It is not for this Court to rewrite the laws. Chapter 13 has been designed to encourage its use, and we must accept the law as written. Suffice it to say that it is not per se bad faith for a debtor to use Chapter 13

---

8. Prior to 1984 post-confirmation modification of a confirmed plan could only be sought by the debtor. *See In re Boone,* 53 B.R. 78 (Bankr.E.D. Va.1985); *In re Fluharty* 23 B.R. 426 (Bankr.N. D.Ohio 1982).

9. There is a third condition for the dischargeability of HEAL loans relating to repayments of loans by practicing health professionals. *See* 42 U.S.C. § 294f(g)(3). This condition would be inapplicable to this Debtor because the Debtor is not a practicing health professional. It is worth

noting that other government insured educational loans are dischargeable in Chapter 7 if *either* five years for repayment has run at the time of the petition (as opposed to discharge) *or* the debtor can show requiring repayment would work an undue hardship. 11 U.S.C. § 523(a)(8). *See, e.g., In re Nunn,* 788 F.2d 617 (9th Cir.1986); *U.S. v. Bradburn,* 75 B.R. 108 (S.D.Ind.1987); *In re Eckles,* 52 B.R. 433 (D.Wis.1985); *In re Osborn,* 72 B.R. 691 (Bankr.W.D.Mo.1987).

to obtain the discharge of an obligation which would be nondischargeable in a Chapter 7 case. The presence of such debts is simply a factor to be considered by the Court in measuring the debtor's fundamental fairness in dealing with her creditors in her Chapter 13 plan. *See Rimgale, supra.*

■ After careful review of the factors cited by HHS as requiring particular attention by this Court, the Court concludes that there is no indication that the Debtor's proposed plan was filed in bad faith. The record reveals that the Debtor has dealt with her creditors, and specifically HHS, in a open and honest manner. She has made honest attempts to come to terms with HHS outside of the context of bankruptcy.[10] Based on the entire record, this Court concludes that the Debtor has demonstrated good faith based upon her proposed payments, financial condition, her earning ability and likelihood of future increases in income, her direct and honest dealings with the unsecured creditors, as well as other facts and circumstances.

## CONCLUSION

This Court concludes the 42 U.S.C. § 254o(c) controls in a Chapter 13 case, however it is premature at this time to determine the dischargeability of HHS's claim. Furthermore, this Court, after having scrutinized the record and the arguments of HHS, concludes that the debtor's plan is proposed in good faith. HHS's objections to confirmation of the Debtor's plan are hereby denied for the reason expressed herein. Her plan meets all of the requirements of 11 U.S.C. § 1325 and is confirmed.[11]

**10.** It is also relevant that before turning to Chapter 13, the Debtor attempted to seek relief from her NHSC debt under the non-bankruptcy provisions of the Public Health Service Act 42 U.S.C. § 254o(c)(2). In addition, she renegotiated payment of the debt after HHS denied the Debtor a hardship discharge under the provisions of the Public Health Service Act. The fact that she was unable to live up to that renegotiation agreement was due to circumstances beyond her control. In fact, she appears to be

using Chapter 13 as a last resort. *Cf. In Re Hawkins,* 33 B.R. 908 (Bankr.S.D.N.Y.1983); *In re Holzer,* 33 B.R. 627 (Bankr.S.D.N.Y.1983); *In re Rappaport,* 16 B.R. 615 (Bankr.D.N.J.1981). *See also Estus,* 695 F.2d at 317 (factor 10).

**11.** This is, of course, a core proceeding under 28 U.S.C. § 157(b)(2)(L) as a matter relating to the confirmation of a plan.